PUBLIC SERVICE CO. OF NEW HAMPSHIRE
*vs.*
ASSESSORS OF TOWN OF BERWICK
AND
INHABITANTS OF TOWN OF BERWICK

York.   Opinion, July 27, 1962.

*Vincent L. McKusick,*
*Sigrid E. Tompkins,* for the plaintiff.

*Titcomb, Federson, and Titcomb,* for the defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ.   DUBORD, J., did not sit.

SULLIVAN, J.   Plaintiff is a corporation resident in New Hampshire and at Berwick, Maine on April 1, 1960 and on April 1, 1961 was the owner of taxable property which the Assessors of Berwick assessed and taxed for each of those respective tax years.

The 1960 tax was committed for collection on July 26, 1960.   On July 14, 1961 the plaintiff filed an application

with the assessors for a partial abatement because of asserted overvaluation. The assessors reported no action upon the abatement sought and gave to the plaintiff no written notice of any decision. On March 16, 1962 the plaintiff appealed to the Superior Court for an adjudication.

The 1961 tax was committed for collection on August 1, 1961 and on September 23, 1961 the plaintiff filed an application with the assessors for a partial abatement because of alleged overvaluation. The assessors failed to take action upon the application for abatement and gave no written notice of any decision thereon. On March 16, 1962 the plaintiff filed its appeal in the Superior Court.

The defendants filed motions to dismiss both appeals and insist that the Superior Court is without jurisdiction to entertain either appeal in as much as neither appeal was commenced within the time allotted by the enabling statute of appeal.

The cases are before this court upon report, for a decision upon the issue of timeliness of the appeals. Rule 72, M. R. C. P., 155 Me. 573. The record consists of the complaints, the answers thereto, the motions for dismissal and an agreed statement of facts.

In 1960 and in 1961 the plaintiff dutifully and seasonably supplied the assessors with a list of its taxable property. R. S., c. 91 A, § 34.

Determination of the controversy here is quite completely an exercise in the interpretation of tax statutes and their application.

R. S., c. 91 A, § 48, amended, contains the following commission:

"The assessors for the time being, on written application, stating the grounds therefor, within 1 year from date of commitment, may make such reasonable abatement as they think proper - - "

R. S., c. 91 A, § 49 ordains:

"The assessors shall give to any person applying to them for an abatement of taxes notice in writing of their decision upon such application within 10 days after they take final action thereon. *If a board of assessors*, before which an application in writing for the abatement of a tax is pending, *fails to give written notice of their decision within 90 days* from the date of filing of such application, *the application shall be deemed to have been denied*, and the applicant may appeal - - - - "
(Italics added.)

The time apportioned for appeal is prescribed by R. S., c. 91 A, § 52, as amended by P. L., 1959, c. 317, § 54:

"The appeal - - - shall be taken *within* 30 days after notice of the decision from which the appeal is being taken, or *not less than 30 days after* the application shall be deemed to have been denied - - - - "
(Emphasis ours.)

The plaintiff filed its abatement applications with the assessors seasonably within a year from the date of commitment of each respective tax. The plaintiff was accorded no response by the assessors, to either abatement petition.

The subjoined tables chronicle the noteworthy events preponderant here:

| 1960 | 1961 |
|---|---|
| July 26, 1960 commitment of taxes. | August 1, 1961 commitment of taxes. |
| July 14, 1961 abatement application. | September 23, 1961 abatement application. |
| March 16, 1962 appeal. | March 16, 1962 appeal. |

As to the abatement application in respect to the 1960 tax, 90 days had expired on October 12, 1961 without notice of decision by the assessors. The appeal was filed,

March 16, 1962, some 155 days subsequent to October 12, 1961.

As to the abatement application in respect to the 1961 tax, 90 days had expired on December 22, 1961 without notice of decision by the assessors. The appeal was filed, March 16, 1962, some 84 days subsequent to December 22, 1961.

Defendants contend that each appeal to be permissive and cognizable should have been filed *within 30 days after the passage of 90 days* from the presentation to the assessors of each respective petition for abatement. The defendants insist that although R. S., c. 91 A, § 52, as amended, countenances *no filing of an appeal less than 30 days* following the elapse of 90 days after the filing of a petition for abatement there is a readily perceptible clerical error in the amended statute. Defendants argue that the Legislature in spite of its positive language purposed to require an appeal to be instituted *within 30 days* following the duration of those 90 days.

To vindicate the soundness of their contention the defendants correctly recall that in order to synchronize appeals with new time fixation and terminals necessitated by the substitution under the Maine Rules of Civil Procedure, 155 Me. 461, effective December 1, 1959, of trial sessions in the Superior Court in lieu of the pristine calendar terms, the Legislature in 1959 amended R. S., c. 91A, § 52.

The pre-amendment language and the post-amendment wording of R. S., c. 91A, § 52 are collated and contrasted in the following legislative graph:

> "The appeal - - - shall be ~~entered at the term first occurring not less than~~ **taken within** 30 days after notice of the decision from which the appeal is being taken, or not less than 30 days after the application shall be deemed to have been denied. - - - - "
> P. L., 1959, c. 317, § 54.

Defendants stress that the clause, *"not less than 30 days after the application,"* etc., palpably is an error of the draftsman and intelligibly should read, *"within 30 days after the application,"* etc. They emphasize that an enforced interlude or compulsory arrestment for 30 days after an appeal becomes useful and before it can be availed of is purposeless. They remonstrate that an irrational delay is imposed while an open ended period for appeal is lavished, if the mischievous clause is read literally. Defendants argue that the words, *"not less than 30 days"* must be interpreted as meaning *"within 30 days"* and cite *Warren Co.* v. *Gorham,* 138 Me. 294, 301 for the principle that:

> " 'The real meaning of the statute is to be ascertained and declared even though it seems to conflict with the words of the statute.' "

The legislative amendment of R. S., 91A, § 52 was but one of some simultaneous 420 statutory revisions, additions, amendments, deletions, etc. (P. L., 1959, c. 317), necessary for assimilating the Maine Rules of Civil Procedure into the adjective law of Maine. The task of the Legislature was a teaming technical formulary. Errors were seemingly held to an irreducible minimum. In due candor it must be acknowledged that there is a self-evident oversight in the amending of R. S., c. 91 A, § 52 and that *"not less than 30 days"* should have been altered to say *"within 30 days."* The Legislature neglected to consummate the adaptation of the statute to the new procedural system.

Plaintiff persists that the amended statute is unambiguously worded and must be accepted literally, that if, error there has been, the rectification is for the Legislature and that certitude as to legislative mistake can not be demonstrated here. Plaintiff invokes the rule supported in such authorities as *Sweeney* v. *Dahl,* 140 Me. 133, 140:

> "The Legislative intent in a statute must primarily be ascertained from the language thereof and not

from conjecture. In other words, the Court will first seek to find the Legislative intention from words, phrases and sentences which make up the subject matter of the statute. If the meaning of the language is plain the Court will look no further; it is interpreted to mean exactly what it says - - - "

Cf. *Bank* v. *Edminster*, 119 Me. 367, 370:

"It is urged that Section 9 is a consolidation of two statutes enacted at different times, one affirming and the other extending the common law and that the sections should be construed as though such consolidation had not taken place.

"But section 9 is plain. If we read the section without reference to its history and development, we are left in no doubt that the last sentence relates only to the assessment of damages.

"A statute which within itself is clear should be construed as it reads. Resort may be and should be had to the genesis and evolution of statutes to explain, but not to discover ambiguties."

Extracted language is to be had from decided cases of this court to echo the contentions here, contradictory though they are, of both plaintiff and defendants. One might theorize that in statutory interpretation as with the grand and familiar equity maxims broad universals too comprehensive at times for practical classification have been culled to rationalize a conclusion which justice between the parties had already rendered obligatory. Statutory canons and rules of interpretation are helpful, necessary, time-tested and revered but are to be judiciously consulted and applied. One such interpretative truism is stated by this court in *Brackett* v. *Chamberlain*, 115 Me. 335, 340:

"But neither of these cases presents the aspect of the case before us. In considering the action of the Legislature, the presumptions against unreason, inconsistency, inconvenience and injustices

are not to be overlooked. Endlich on Stats., c. IX; - - - "

In *Lumber Co.* v. *Electric Co.*, 121 Me. 287, 294, we find:

" - - - it is a well recognized rule of construction that statutes should be construed in a reasonable rather than in an unreasonable manner and so as to protect the rights of all rather than to sacrifice the rights of any."

In the instant case understandably because of a veritable myriad of amendments involved there is disclosed an oversight in the accommodation of a statute to a reform in court procedure. Resultantly one having occasion to appeal, as did this plaintiff, from a pocket veto by assessors of his tax abatement request is affirmatively forbidden by the amended statute to become an appellant during 120 days from his application. No *raison d'etre* is ascertainable for the enforced delay during those last 30 days.

If the defendants' indictment of plaintiff's appeals is valid and such appeals are fatally tardy because their commencement was not *within the 30 days* following the 90 days of the assessors' reticence, then the plaintiff's conformity with a clear legislative directive was its undoing. That result, to speak mildly, would be incongruous.

It is true that the literal statutory amendment seemingly extends the time for appeal indefinitely. Such a plight serves to subject the municipality to prolonged suspense and hazard as to the integrity of the challenged tax. That anomaly could decide assessors to elect to report their decision to an applicant for abatement but was not so potent here. In fact the defendant assessors by declining to communicate with the plaintiff invited the current dispute. Nor is this plaintiff beyond censure for its delays in instituting its appeals for considerable periods in the wake of 90 days.

If circumspectly possible the plaintiff should be afforded a hearing upon the merits of its appeals. The defendants could have no worthy provocation if the abatements are unwarranted. If the plaintiff's grievance is real, there should be redress. It is our considered conclusion that the objective of balanced justice will be more surely attained under the special circumstances of this case if the motions of the defendants are overruled.

The mandate will be:

> *Motions of defendants overruled; cases remanded to the Superior Court for further, appropriate proceedings.*