**PEOPLES DRUG STORES, INCORPORATED, Appellant,**

**v.**

**DISTRICT OF COLUMBIA, Appellee.**

**No. 82–1297.**

District of Columbia Court of Appeals.

Argued En Banc Nov. 3, 1983.

Decided Dec. 15, 1983.

---

James Robertson, Washington, D.C., with whom F. David Lake, Jr., Washington, D.C., and Helen Torelli, Washington, D.C., were on brief, for appellant.

Richard G. Amato, Assistant Corp. Counsel, with whom Judith W. Rogers, Corp. Counsel, at time brief was filed, Charles L. Reischel, Deputy Corp. Counsel, and Richard L. Aguglia, Asst. Corp. Counsel, Washington, D.C., were on brief, for appellee.

Before NEWMAN, Chief Judge, and KERN, NEBEKER, MACK, FERREN, PRYOR and TERRY, Associate Judges.

FERREN, Associate Judge:

The trial court dismissed appellant's petition challenging a District of Columbia use tax assessment, concluding that the court lacked jurisdiction because the petition was not timely filed pursuant to D.C.Code § 47–2403 (1973).[1] A division of this court, in an unpublished memorandum opinion and judgment issued July 19, 1983, concluded that it was "constrained to affirm the trial court's dismissal" in light of the interpretation given § 47–2403 in *Donahue v. District of Columbia,* 368 A.2d 1147 (D.C. 1977) (per curiam).[2] Upon consideration by the full court, we now overrule *Donahue* (except to the extent necessary to address the particular facts of that case) and reverse the trial court's order dismissing appellant's petition.

## I.

On August 18, 1977, appellee District of Columbia mailed to appellant taxpayer a Notice of D.C. Tax Due. The notice included a use tax assessment of $50,309.33, plus interest, for advertising supplements paid for by taxpayer and distributed in the District of Columbia. Taxpayer paid the tax

---

1. D.C.Code § 47–2403 (1973) provides:

   Any person aggrieved by any assessment by the District of any personal-property, inheritance, estate, business-privilege, gross-receipts, gross-earnings, insurance premiums, or motor-vehicle-fuel tax or taxes, or penalties thereon, may within six months after payment of the tax together with penalties and interest assessed thereon, appeal from the assessment to the Superior Court of the District of Columbia. The mailing to the taxpayer of a statement of taxes due shall be considered notice of assessment with respect to the taxes.
   This section was recodified at D.C.Code § 47–3303 (1981), and later amended by D.C.Law 4–131, § 401 (effective date July 24, 1982), 29 D.C.Reg. 2418 (1982), *see* D.C.Code § 47–3303 (1983 Supp.). This amendment, which has no effect on the present case, clarified the filing requirements for appealing a tax assessment by providing that appeals must be filed "within six months after the date of such assessment." *Id.*

2. Under this court's internal operating procedures, a division of the court may not refuse to follow a controlling published opinion of a previous division. A decision may be overruled only by the full court sitting en banc. *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

on September 14, 1977, but filed a petition for refund in the Tax Division of Superior Court on March 14, 1978.

The only issue in this case is whether taxpayer's petition was timely filed. The District of Columbia concedes that, under *Sears, Roebuck and Co. v. District of Columbia,* Tax Div. Docket No. 2463 (D.C.Super.Ct. May 13, 1981), the use tax paid by taxpayer with respect to advertising supplements was assessed in error; thus, if taxpayer's petition was timely filed, taxpayer is entitled to a refund. The District maintains, however, that pursuant to D.C.Code § 47–2403 (1973), an appeal from an assessment must be taken within six months of the assessment, and thus taxpayer's petition—filed nearly seven months after the assessment—was untimely. Taxpayer argues, to the contrary, that the plain wording of § 47–2403 permits appeals "within six months after payment of the tax," and that its petition, filed exactly six months after payment, complied with this statutory requirement.

We agree with the earlier memorandum opinion and judgment of the division in this case that, if *Donahue, supra,* is good law, it controls this case and the District of Columbia must prevail. Although the factual scenario in *Donahue* can be distinguished from the facts here,[3] the *Donahue* holding clearly purports to extend to cases such as the one now before the court:

> We previously suggested, and now hold, "that the period for *all* appeals under § 47–2403 runs from the mailing of the assessment, the clause 'after payment . . .' to be read as 'provided payment has been made.'"

368 A.2d at 1148 (emphasis in original) (quoting *National Graduate University v.*

*District of Columbia,* 346 A.2d 740, 743 n. 7 (D.C.1975)). Moreover, the *Donahue* court expressly "reject[ed] [the] argument that the six-month period for filing an appeal does not commence until after payment of the tax." *Id.*

## II.

In reviewing this court's interpretation of § 47–2403 in *Donahue,* "[w]e must first look at the language of the statute by itself to see if the language is plain and admits of no more than one meaning." *Davis v. United States,* 397 A.2d 951, 956 (D.C.1979). "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Varela v. Hi-Lo Powered Stirrups, Inc.,* 424 A.2d 61, 64 (D.C.1980) (en banc) (quoting *United States v. Goldenberg,* 168 U.S. 95, 102–03, 18 S.Ct. 3, 4, 42 L.Ed. 394 (1897)). Moreover, in examining the statutory language, it is axiomatic that "[t]he words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them." *Davis, supra,* 397 A.2d at 956; *United States v. Thompson,* 347 A.2d 581, 583 (D.C.1975).

The critical language of § 47–2403 provides: "Any person aggrieved by any assessment . . . may within six months after payment of the tax together with penalties and interest assessed thereon, appeal from the assessment to the Superior Court." These words, given their ordinary meaning, plainly indicate that the six-month period for filing an appeal does not begin to run until after the taxpayer has paid the assessment.

The *Donahue* decision did not, however, simply rely on the statutory language for its reading of § 47–2403. The court based

---

3. In *Donahue,* the taxpayer received a notice of assessment and made a partial payment of his assessment tax liability in October 1973. A second and final installment was not paid until September 13, 1974. It was not until February 1975 that taxpayer petitioned the Tax Division for a refund, claiming that because his appeal was filed within six months of his final payment, he fit within the statutory language of

§ 47–2403. Thus, the court in *Donahue* could have dismissed the petition on the narrow ground that, where a taxpayer makes more than one payment on a single assessment, a petition for refund must be filed within six months of the first payment. It is only this narrow basis for the result reached in *Donahue* that survives today's opinion and judgment.

its conclusion on a reading of the legislative history of the statute. 368 A.2d at 1148 (citing *National Graduate University, supra,* 346 A.2d 740). This resort to the legislative history was not, in and of itself, improper. Both the Supreme Court and this court have recognized that "words are inexact tools at best, and for that reason there is wisely no rule of law forbidding resort to explanatory legislative history no matter how 'clear the words may appear on superficial examination.'" *Harrison v. Northern Trust Co.,* 317 U.S. 476, 63 S.Ct. 361, 87 L.Ed. 407 (1943) (citations omitted); *Davis, supra,* 397 A.2d at 956; *see Sanker v. United States,* 374 A.2d 304, 307 (1977) (quoting *Lynch v. Overholser,* 369 U.S. 705, 710, 82 S.Ct. 1063, 1067, 8 L.Ed.2d 211 (1962) ("The decisions of this Court have repeatedly warned against the dangers of an approach to statutory construction which confines itself to the bare words of a statute, ... for 'literalness may strangle meaning.'") (citations omitted)).

Nor should *Donahue* necessarily be overruled simply because its reading of § 47–2403 does not comport with the meaning most readily derived from the words of the statute. Although the "plain meaning" rule is certainly the first step in statutory interpretation, it is not always the last or the most illuminating step. This court has found it appropriate to look beyond the plain meaning of statutory language in several different situations.

■ First, even where the words of a statute have a "superficial clarity," a review of the legislative history or an in-depth consideration of alternative constructions that could be ascribed to statutory language may reveal ambiguities that the court must resolve. *Sanker, supra,* 374 A.2d at 307 (quoting *Barbee v. United States,* 392 F.2d 532, 535 n. 4 (5th Cir.), *cert. denied,* 391 U.S. 935, 88 S.Ct. 1849, 20 L.Ed.2d 855 (1968) ("'Whether or not the words of a statute are clear is itself not

always clear'")); *accord Davis, supra,* 397 A.2d at 956. Second, "'the literal meaning of a statute will not be followed when it produces absurd results.'" *Varela, supra,* 424 A.2d at 65 (quoting *District of Columbia National Bank v. District of Columbia,* 121 U.S.App.D.C. 196, 198, 348 F.2d 808, 810 (1965) (citations omitted)); *Berkley v. United States,* 370 A.2d 1331, 1332 (D.C.1977) (per curiam) ("statutes are to be construed in a manner which assumes that Congress acted logically and rationally"). Third, whenever possible, the words of a statute are to be construed to avoid "obvious injustice." *Metzler v. Edwards,* 53 A.2d 42, 44 (D.C.Mun.App.1947); *see Center for National Policy Review on Race & Urban Issues v. Weinberger,* 163 U.S.App.D.C. 368, 372, 502 F.2d 370, 374 (1974) ("[a] court may qualify the plain meaning of a statute" to avoid consequences that would be "plainly ... inequitable").

■ Finally, a court may refuse to adhere strictly to the plain wording of a statute in order "to effectuate the legislative purpose," *Mulky v. United States,* 451 A.2d 855, 857 (D.C.1982), as determined by a reading of the legislative history or by an examination of the statute as a whole. *Floyd E. Davis Mortgage Corp. v. District of Columbia,* 455 A.2d 910, 911 (D.C.1983) (per curiam) ("a statute is to be construed in the context of the entire legislative scheme"); *Dyer v. D.C. Department of Housing and Community Development,* 452 A.2d 968, 969–70 (D.C.1982) ("[t]he use of legislative history as an aid in interpretation is proper when the literal words of the statute would bring about a result completely at variance with the purpose of the Act"); *District of Columbia v. Orleans,* 132 U.S.App.D.C. 139, 141, 406 F.2d 957, 959 (1968) ("the 'plain meaning' doctrine has always been subservient to a truly discernible legislative purpose however discerned, by equitable construction or recourse to legislative history").[4]

4. There has been, at least since 1930, a debate as to how willing courts should be to deviate from the plain meaning rule when engaging in

statutory interpretation. *Compare* Landis, *A Note on "Statutory Interpretation",* 43 Harv.L. Rev. 886, 888 (1930) (advocating that courts

These exceptions to the plain meaning rule should not, however, be understood to swallow the rule completely. There are strong policy reasons for maintaining the certainty, fairness, and respect for the legal system that the plain meaning rule engenders in most instances. Unless the meaning of statutes can be readily ascertained by a reading of statutory language, the ability of citizens to comply with statutory standards is diminished and the administration of such standards may be unmanageable or even erratic. For these reasons, a court should look beyond the ordinary meaning of the words of a statute only where there are "persuasive reasons" for doing so. *Tuten v. United States,* 440 A.2d 1008, 1013 (D.C. 1982), *aff'd* —— U.S. ——, 103 S.Ct. 1412, 75 L.Ed.2d 359 (1983).

■ We find no such "persuasive reasons" to support the *Donahue* holding. The legislative history relied on by the court in *Donahue,* as well as by both parties in this case, is ambiguous and conflicting on the issue before the court.[5] Where legislative materials are " 'without probative value, or contradictory, or ambiguous,' [they] should

not be permitted to control the customary meaning of words." *NLRB v. Plasterers' Local Union No. 79, Operative Plasterers' & Cement Masons' Int'l Ass'n,* 404 U.S. 116, 129 n. 24, 92 S.Ct. 360, 369 n. 24, 30 L.Ed.2d 312 (1971) (quoting *United States v. Dickerson,* 310 U.S. 554, 562, 60 S.Ct. 1034, 1038, 84 L.Ed. 1356 (1940)).

Moreover, an in-depth consideration of the wording of § 47–2403, "within six months after payment of the tax," does not reveal any hidden ambiguity. Nor does reading this language according to its ordinary meaning produce absurd or inequitable results, or undermine the purposes or policies that underlie the District of Columbia Tax Code. Indeed, it is not uncommon for a tax statute to use the date of payment to mark the commencement of the filing period for a refund claim. *See* D.C.Code § 47–2020 (Supp.1983) (sales tax refunds); *see also* 26 U.S.C. § 6511 (1954 & Supp. 1983) (period of limitation for filing claim with the Internal Revenue Service for refund of overpayment of federal income tax).

limit themselves to seeking legislative intent on specific matters and claiming that judicial resort to general legislative purposes or policies leads to "spurious interpretation") *with* Radin, *Statutory Interpretation,* 43 HARV.L.REV. 863, 871 (1930) (arguing that a search for actual legislative intent is unrealistic and recommending "purposive interpretation" of statutory language). When a court is confronted with a question of statutory interpretation, the "legislative intent" model, described by Landis, *supra,* prescribes an essentially historical inquiry to determine how the enacting legislature would have answered the specific question before the court. "Purposive interpretation," on the other hand, recognizes that courts most often confront questions of statutory interpretation that never occurred to the enacting legislature. Under this model, a court will attempt to discern the general purpose or policy that motivated the legislature to pass a statute, and then construe the statute in the manner most consistent with that purpose. *See generally,* Note, *Intent, Clear Statements, And the Common Law,* 95 HARV.L.REV. 892 (1982); Lehman, *How to Interpret a Difficult Statute,* 1979 WISC. L.REV. 489.

Most commentators agree that, despite the fact that many courts use the terms "intent"

and "purpose" interchangeably, purpose-based analysis has dominated judicial decision making for the past twenty-five years. G. Calabresi, A COMMON LAW FOR THE AGE OF STATUTES 30 (1982); *see* H. Hart & A. Sacks, The Legal Process 1410 (tent. ed. 1958) (unpublished manuscript); *but see* Note, *Intent, Clear Statements, And the Common Law, supra* (recognizing general predominance of "purposive interpretation," but suggesting that recent Supreme Court cases reflect a return to stricter legislative intent analysis).

5. The court in *Donahue,* and the District of Columbia here, rely on a single sentence from a House of Representatives Committee Report to support their reading of § 47–2403. *See* H.R. REP. No. 907, 91st Cong., 2d Sess. 165 (1970). Taxpayer, on the other hand, points to the technical manner in which § 47–2403 was reworded by the District of Columbia Court Reform and Criminal Procedure Act of 1970 in support of its argument. While both pieces of legislative history provide some minimal support for their proponents' respective positions, neither represents conclusive evidence of legislative intent or purpose.

**756**

D.C.Code § 47–2403 (1973) governed the right to appeal from a wide range of tax assessments, including taxes applicable to individual taxpayers. Statutes of this type should generally be construed to protect a taxpayer's reliance on statutory language and to preserve a taxpayer's right to challenge an assessment. *See, e.g., Public Service Co. of New Hampshire v. Assessors of Berwick,* 158 Me. 285, 183 A.2d 205 (1962). A taxpayer should not be forced to achieve familiarity with the intricacies of case law or to retain legal counsel simply to determine the extent of the right to question the size of a tax payment. The court in *Donahue* read § 47–2403 in a manner which rendered the otherwise plain language of that section misleading. Accordingly, we overrule the holding of *Donahue,* except as applied to its specific facts (note 3 *supra*), reverse the trial court's dismissal of taxpayer's petition, and remand for further proceedings.

*Reversed and remanded.*