Wilma A. RANDALL, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART- MENT OF EMPLOYMENT SERVICES, Respondent.

No. 87-1043.

District of Columbia Court of Appeals.

Submitted Oct. 18, 1988.
Decided Dec. 8, 1988.

---

Wilma A. Randall, pro se.

Frederick D. Cooke, Jr., Acting Corp. Counsel at the time the petition for review was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., entered an appearance for respondent.

N. Denise Wilson–Taylor, Washington, D.C., entered an appearance for the District of Columbia Dept. of Employment Services.

Before ROGERS, Chief Judge,* and FERREN and TERRY, Associate Judges.

ROGERS, Chief Judge:

Petitioner Wilma Randall appeals from the denial of her claim under the District of Columbia Victims of Violent Crime Compensation Act of 1981, D.C.Code §§ 3–401 et seq. (1988 Repl.). She contends that the Department of Employment Services erred in relying on § 3–403(c)(3) to deny her benefits based on her protest of the decision by the prosecutor not to prosecute her assailant. We agree, and accordingly, we reverse and remand.

## I.

Petitioner Wilma A. Randall filed a timely application for compensation under the District of Columbia Victims of Violent Crime Compensation Act of 1981, D.C.Code §§ 3–401 et seq. (1988 Repl.) ("Act"). Her claim was based on an alleged assault with a knife by a woman named Ross. As a result of the injuries to her side and abdomen, petitioner underwent emergency surgery to save her life and incurred medical expenses in excess of $12,000. She also lost time from her part-time job with Homemaker Care. The claims examiner in the Office of Crime Victims' Compensation

(OCVC) denied petitioner's claim on the ground that she had aided in the commission of the assault. Petitioner requested an evidentiary hearing.

The evidence at the hearing indicated that the Office of the United States Attorney had declined to prosecute Ross because she claimed to have acted in self-defense. The Office maintains a policy of not prosecuting cases in which the outcome depends solely on the weight of one person's word against another's. Petitioner testified that she did not provoke the assault, that she had left the lounge where she and Ross had a dispute about petitioner's saving or not saving a seat next to her, and that a neutral third party had witnessed the assault in the street. The neutral eyewitness had not been subpoenaed to appear before the Grand Jury, but had prepared an affidavit supporting petitioner's version of the assault which petitioner submitted in evidence.

The evidence also showed that petitioner and her mother had urged the prosecutor on a number of occasions to reconsider the decision not to prosecute. Petitioner had been especially persistent in her efforts to obtain a prosecution, as well as victim benefits, and had accused others of thwarting her efforts. Petitioner even filed a protest with the supervisor of the Assistant U.S. Attorney who handled the case after apparently learning of the Assistant's letter, which stated that there was evidence that both petitioner and Ross were armed and that petitioner provoked the assault; this letter formed the basis for the claims examiner's denial of petitioner's claim for benefits.

The Hearing Examiner issued a Recommended Final Determination in which he found that petitioner was eligible to receive benefits under D.C.Code § 3–402 because there was insufficient evidence to show that petitioner contributed to the crime, and petitioner was willing to cooperate in the prosecution of her assailant. Id. §§ 3–403(b) & (c)(3). He concluded, however, that while petitioner's actions would not be

* Judge Rogers was an Associate Judge of the court at the time this case was submitted for decision. Her status changed to Chief Judge on November 1, 1988.

sufficient to deny her all benefits, her "failure to cooperate reasonably with the United States Attorney General's Office in handling the case" justified reducing her benefits. The Hearing Examiner observed that petitioner

> was overly zealous in her attempts to have charges pressed against Ross and became quite irritated and verbally abusive in some instances when trying to make her points. It is also undisputed that the petitioner and petitioner's mother have made telephone call after telephone call [to OCVC] to express their concern over the case. These actions, while admirable in their intent, have been disruptive to a number of persons and have effectively interfered with the thoroughness of the proceeding. Indeed in the hearings ... I constantly had to admonish petitioner from interrupting the proceedings and had to finally state that if there were another outburst, she would be removed from the hearing room.

He advised that once the prosecutor had decided not to prosecute

> it is not incumbent upon the petitioner to use harassing and disruptive tactics to either get attention or get the [prosecutor's] office to change its mind. More appropriately, the petitioner should have sought legal counsel at that point as opposed to trying to change things on her own.

Accordingly, the Examiner found that "the petitioner began to act unreasonably with authorities after she found out that there was not going to be a case brought against Ross." The Examiner proposed, therefore, to reduce petitioner's benefits on the basis of D.C.Code § 3–403(c)(3), which provides:

> An award of compensation may be reduced, reconsidered, or denied if the victim or claimant has not reasonably cooperated with law enforcement officials *to apprehend and prosecute* the offender, except that refusal of a victim or claimant to testify against the offender may be excused if testifying would subject the victim or claimant to a substantial risk of serious physical or emotional injury. It is not necessary that an offender

either be apprehended or convicted in order for compensation to be awarded under this chapter.

*Id.* (emphasis added).

The OCVC adopted the Hearing Examiner's recommendation as a Proposed Final Determination. Petitioner filed exceptions, noting that her actions—"call[ing the prosecutor's] office frequently, ... complain[ing] bitterly, and in a rather obstreperous way try[ing] to get the U.S. Attorney to change his mind [about prosecuting the case]"—should not be held against her because they were "not willful, but the product of the psychological factors brought on or brought out by the stabbing and its aftermath," and that the Act did not include a provision penalizing a person who is upset by a refusal to prosecute. The acting deputy director for Labor Standards of the Department of Employment Services (DOES) thereafter reversed the Proposed Final Determination, and in a Final Determination denied petitioner's claim for benefits on the basis of her failure to cooperate with legal authorities, citing § 3–403(c)(3). The acting deputy director offered as his full rationale:

> From the sequence of events surrounding this petitioner's case, it is clear that she has attempted to make a mockery of the established policies and procedures of the Crime Victims Compensation program and the judicial system. It was apparent from the Petitioner's inability to have a case brought against her assailant that there was insufficient evidence to show that she was an innocent victim of a violent crime. Also, her constant interference with the administrative and the judicial process did not help matters. Most importantly, Petitioner clearly fabricated certain comments on the record surrounding her stabbing which raised serious credibility questions about her subsequent testimony.

## II.

### A.

"[T]he interpretation of a statute by an agency entrusted with its execution is to be

93

given considerable deference." *Morris v. District of Columbia Dep't of Employment Servs.*, 530 A.2d 683, 690 (D.C.1987) (citations omitted). This court will uphold the agency's interpretation unless it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. *Smith v. District of Columbia Dep't of Employment Servs.*, 548 A.2d 95, 97 (D.C. 1988) (citing D.C.Code §§ 1–1510, 11–722 (1981)). Where an agency has been delegated broad authority to administer a statutory scheme, we defer to the agency's reasonable construction of the statute. *Id.* (citations omitted). Accordingly, the agency's interpretation of the statute is binding on this court unless that interpretation conflicts with the statute's plain meaning or its legislative history. *Id.* (citations omitted).

■ As petitioner points out in her petition for review,[1]

[t]he language of § 3–403 is all focused on the period prior to a final determination of the relevant criminal charges. Thus, the section mentions apprehension, prosecution and testimony against the alleged assailant. The section does not refer to actions by persons taken after a trial, or after a decision is made not to prosecute, which effectively ends the case against the accused.

Certainly, this section makes no reference to a claimant's actions before the Victim Witness Assistance Office in the U.S. Attorney's Office and the OCVC, actions on which the Hearing Examiner, the OCVC and the acting deputy director placed considerable reliance. Thus, the plain meaning of this section provides no support for reduction or denial of a claim based on a claimant's activities after the prosecutor's decision not to prosecute. *See Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983) (plain meaning). Nor is there anything in the legislative history to support OCVC's or the act-

ing deputy director's interpretation of this section. *Id.* at 753–54. *See* COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT ON BILL 4–361, "VICTIMS OF VIOLENT CRIME COMPENSATION ACT OF 1981" (December 16, 1981) (hereinafter LEGISLATIVE HISTORY).

In the course of the hearing, and in the proposed final determination, the Hearing Examiner noted that "petitioner's actions should not be viewed too harshly" in view of "her limited education and limited knowledge of the niceties of requesting information, and [because] at the time [she] was acting without legal representation...." The Examiner conceded that it was not unreasonable for petitioner's counsel to suggest that petitioner was understandably upset upon learning that the woman who admitted stabbing her would go free without standing trial. This seems particularly true in view of petitioner's claim that she was pregnant at the time of the assault and evidence that a neutral eyewitness, who apparently was not called to testify before the Grand Jury, by affidavit refuted Ross' self-defense claim. Indeed, it is likely that a claimant seeking compensation under the Act as a victim of a violent offense often will be upset when prosecution is declined. Consequently, the purpose of the Act might well be undermined were compensation to be reduced or denied on this basis. As the D.C. Council noted,

Many of these victims suffer disabilities, incur financial hardships, or become dependent upon public assistance. While no program could ever fully compensate a victim's loss or hardship, the program offered by this bill will serve to mitigate some of the economic costs that can compound the hardship already suffered.

LEGISLATIVE HISTORY at 3.

The D.C. Council was undoubtedly aware of the emotionally charged reactions of persons who are victims of violent crime. Yet, significantly, the Act does not contain a

**1.** Petitioner was represented by counsel before the agency and counsel filed the petition for review. Thereafter, counsel withdrew and petitioner *pro se* filed a brief in this court which concerns matters we need not address. Counsel's petition for review sought to appeal the

August 10, 1985, decision of the Office of Crime Victims Compensation. The August 10, 1985, decision was made by the acting deputy director for Labor Standards of DOES, and it is that decision which we review.

provision for penalizing a claimant who is upset by a refusal to prosecute and persists in efforts to obtain a prosecution. Nor does the Act penalize a claimant who protests the handling of the case by the prosecutor or by those with responsibility for compensation of victims. Prosecutors' offices have long experience in handling distraught victims of crime, and the D.C. Council could reasonably assume that those responsible for administering the Act would deal sympathetically with claimants, excusing their occasional outbursts and even their persistence in demanding benefits.

Of course, the OCVC, as well as the Victim Witness Assistance Office in the prosecutor's office, must be able to conduct its proceedings in an orderly fashion, and can establish appropriate rules of procedure. The claimant who disrupts those proceedings faces the self-defeating prospect of having a decision on the benefits claim delayed if the investigation of the claim is postponed or the evidentiary hearing rescheduled. Indeed, assuming that the Hearing Examiner's finding is supported by substantial evidence in the record,[2] petitioner's behavior in the Victim Witness Assistance Office had an adverse affect on those who otherwise might have been more helpful. It undoubtedly had an adverse effect on the Hearing Examiner, who did not credit her testimony and proposed to reduce her benefits, and on the acting deputy director. As a result, her receipt of benefits under the Act has been considerably delayed.

### B.

■ There is another problem with the DOES decision to deny petitioner benefits under the Act. In deciding a second level agency appeal without the benefit of live testimony, the acting deputy director was bound by the Hearing Examiner's findings of fact. *See, e.g., Dell v. District of Columbia Dep't of Employment Servs.*, 499 A.2d 102, 106 (D.C.1985) (citations omitted).

The Hearing Examiner did not find that petitioner's actions made a mockery of the judicial system; moreover, the record does not support that conclusion. At the hearing, the representative from the U.S. Attorney's Office (who was not the Assistant U.S. Attorney who had written the letter but a program specialist from the Victim Witness Assistance Office) could relate from personal knowledge only one incident involving an outburst by petitioner against a witness and otherwise reported that petitioner had, at times, used abusive language when the program specialist was investigating her case. There was no suggestion that petitioner had refused to cooperate in the apprehension or prosecution of her assailant; quite the contrary. The Hearing Examiner even proposed to remand the case to the U.S. Attorney's Office for additional information on which to determine the amount that petitioner's claim should be reduced because that Office "has only provided a smidgen of information relative to the specifics of petitioner's egregious behavior...."

Nothing in our decision should be read as condoning in any way what the hearing examiner described as petitioner's "harrassing and disruptive" behavior in her effort to have her assailant prosecuted. We hold only that this behavior was and is irrelevant to her entitlement to benefits under the Victim Compensation Act. The relevance of § 3–403(c)(3) ends at the point the prosecutor decides not to prosecute and, thus, it cannot be the basis for denying petitioner's claim. Consequently, the denial of petitioner's claim must be reversed. *Morris, supra,* 530 A.2d at 690 (agency order can be sustained only on the grounds relied on by the agency) (citations omitted). Accordingly, we reverse the decision denying petitioner's claim for compensation and remand the case to DOES for a determination of the amount of compensation to which petitioner is entitled under the Act, as an eligible victim, § 3–402, and

---

**2.** Since the issue before us concerns statutory construction, we do not consider whether the agency's findings of fact are supported by substantial evidence and not clearly erroneous.

*See Kopff v. District of Columbia Alcoholic Beverage Control Bd.,* 381 A.2d 1372, 1386–87 (D.C. 1977) (citing D.C.Code § 1–1509(e) (1977 Supp.)).

for such other relief as she may be entitled to under the Act.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**