*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CM-370

DARNELL W. KORNEGAY, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-14607-17)

(Hon. Patricia A. Broderick, Trial Judge)

(Argued October 23, 2019                    Decided September 3, 2020)

*Nigel A. Barrella* for appellant.

*Kevin Birney*, Assistant United States Attorney, with whom *Jesse K. Liu*, United States Attorney, and *Elizabeth Trosman*, *Suzanne Grealy Curt*, and *Andrea Coronado*, Assistant United States Attorneys, were on the brief, for appellee.

Before EASTERLY and MCLEESE, *Associate Judges*, and STEADMAN, *Senior Judge*.

Opinion for the court by *Associate Judge* EASTERLY.

Dissenting opinion by *Senior Judge* STEADMAN at page 19.

EASTERLY, *Associate Judge*: During a search after a traffic stop, police found less than two ounces of marijuana on and near Darnell W. Kornegay's person. Mr. Kornegay was convicted after a bench trial of possession with intent to distribute a controlled substance ("PWID"). Relying on recent amendments to the D.C. Code, he argues on appeal as he did at trial that, because it is now expressly lawful for an adult to possess less than two ounces of marijuana and because less than two ounces of marijuana in these circumstances no longer falls within the definition of a controlled substance, it cannot be a crime to possess with the intent to distribute that amount of marijuana. Alternatively, he argues that the evidence of his intent to distribute marijuana is legally insufficient. We agree that it was lawful for Mr. Kornegay to possess less than two ounces of marijuana in these circumstances, need not address his second argument, and remand for the trial court to vacate his conviction.

## I. Facts

Officers of the United States Park Police pulled over Mr. Kornegay, then twenty-two, on August 24, 2017, for a suspected window-tint violation as he was driving in the 2600 block of Southern Avenue Southeast. As one officer approached the vehicle, he noticed Mr. Kornegay reaching underneath his seat.

After instructing Mr. Kornegay to roll down his window, the officer saw a clear plastic bag containing a "green plant like material" in the armrest of the driver's door. The officer then directed Mr. Kornegay to step out of the vehicle and patted him down. Near Mr. Kornegay's waistband, the officer felt "an unnatural bulge" which turned out to be two more sandwich bags of a "green plant like material." All three bags contained marijuana, the combined weight of which was approximately 1.73 ounces. The officers also recovered $769 in cash from Mr. Kornegay's pants pocket, as well as additional empty plastic sandwich bags and a digital scale bearing a "green plant like material residue" from beneath the driver's seat of the car.

Mr. Kornegay was charged with PWID marijuana, in violation of D.C. Code § 48-904.01(a)(1) (2014 Repl. & 2020 Supp.). At a bench trial, a Metropolitan Police Department ("MPD") officer testified as an expert in the "packaging, distribution, and sale of marijuana on the streets of the District of Columbia." He testified that, with the scale, marijuana, plastic bags, and cash, Mr. Kornegay, at the time of his arrest, "ha[d] everything . . . need[ed] to sell marijuana." Mr. Kornegay testified in his own defense. He admitted that he smoked marijuana and stated that on the night he was pulled over, he was heading to a birthday party and was taking some marijuana with him to give as a gift to the "birthday girl" and to

share with friends at the party. He testified that he was carrying cash that evening because he liked to pay for things in cash. The court did not credit Mr. Kornegay's testimony and found him guilty of PWID marijuana. This appeal followed.

## II. Legal Framework

For decades, marijuana has been defined in the D.C. Code as "a controlled substance." *See* District of Columbia Uniform Controlled Substances Act of 1981, D.C. Law 4-29 §§ 102(3), 212(b), 401(a)(1) (1981). As such, D.C. Code § 48-904.01(a)(1), which makes it a crime "for any person knowingly or intentionally to . . . possess[] with intent to . . . distribute[] a controlled substance," has long been understood to apply to marijuana in any amount.[1] But in 2014, the law governing marijuana changed significantly.

---

[1] Reaching back further in time, marijuana was designated a "poison," the actual sale of which without the proper license was unlawful. *See* An Act to regulate the practice of pharmacy and the sale of poisons in the District of Columbia, Pub. L. No. 148, ch. 2084, § 13, 34 Stat. 175, 180 (1906). *See generally* Richard J. Bonnie & Charles H. Whitebread, II, *The Forbidden Fruit and the Tree of Knowledge: An Inquiry into the Legal History of American Marijuana Prohibition*, 56 Va. L. Rev. 971, 989–91, 998–1011 (1970) (discussing the evolution of the criminalization of marijuana).

First, the D.C. Council enacted the Marijuana Possession Decriminalization Amendment Act of 2014, which made it only a civil infraction for a person to possess or "transfer without remuneration" one ounce or less of marijuana. D.C. Law 20-126, § 101(a) (codified as amended at D.C. Code § 48-1201(a)). The impetus for the legislation was the acknowledged absence of a strong public health rationale for marijuana criminalization,[2] coupled with a reassessment of its costs, including the disproportionate arrest rates of African Americans for marijuana possession[3] and "the devastating toll" of these arrests on the individuals, their

---

[2] Marijuana Possession Decriminalization Amendment Act of 2014, D.C. Council, Report on Bill 20-409, at 6 (2014) (noting "that marijuana is generally accepted to be no more harmful or addictive than alcohol or tobacco, perhaps less so").

[3] The Council cited data showing, among other things, that (1) marijuana possession arrests had increased 62% between 2001 and 2010 and that the District's per capita marijuana arrest rate in 2010 was higher than any other state in the nation; and (2) of the individuals arrested for a single count of marijuana possession in the District between 2010 and 2013, the percentage of African American arrestees was never lower than 87.72% and went as high as 93.77%, even though African Americans are only about half of the District's population and the use of marijuana by blacks and whites is comparable. Report on Bill 20-409, at 3–4.

families, and communities,[4] as well as the diversion of law enforcement, public defender, and judicial resources flowing from these arrests.[5]

The Council enacted D.C. Code § 48-1201(a) against the backdrop of strong public opinion in favor of decriminalization of marijuana for personal use.[6] But the District's voters were not satisfied, and later that same year they went further and approved the Legalization of Possession of Minimal Amounts of Marijuana for Personal Use Initiative of 2014, D.C. Law 20-153 (2014). As described in the ballot summary, this initiative called for a

> change[ to] the laws of the District of Columbia to make it lawful . . . for a person 21 years of age or older to possess up to 2 ounces of marijuana for personal use; . . . [and] transfer without payment (but not sell) up to one ounce of marijuana to another person 21 years of age or older . . . .

*Id.* With the approval of this initiative, D.C. Code § 48-904.01(a), the umbrella statute that prohibits the "manufacture, distribut[ion], or possess[ion]" of a controlled substance "with the intent to manufacture or distribute," was amended

---

[4] The report noted that the downstream consequences of such an arrest include loss of employment, housing, food assistance, and other forms of public support, which adversely impact both the individual arrested and their families. Report on Bill 20-409, at 5.

[5] Report on Bill 20-409, at 4–5.

[6] Report on Bill 20-409, at 6 (citing 2013 poll showing that "75% of District residents support decriminalization of small amounts of marijuana").

in two ways. *See* D.C. Code § 1-204.105 (2016 Repl.) (providing that initiatives adopted by voter referendum "shall be an act of the Council" after the Board of Elections and Ethics certifies the vote).

First, the amended statute expressly made it "lawful and . . . not . . . an offense under District Columbia law, for any person 21 years of age or older" to:

> (A) Possess, use, purchase, or transport marijuana weighing 2 ounces or less;
>
> (B) Transfer to another person 21 years of age or older, without remuneration, marijuana weighing one ounce or less;
>
> (C) Possess, grow, harvest, or process, within the interior of house or rental unit that constitutes such person's principal residence, no more than 6 cannabis plants [meeting certain qualifications, and including a cap on the number of plants in a single residence];
>
> (D) Possess within such house or rental unit the marijuana produced by such plants; provided that nothing in this subsection shall make it lawful to sell, offer for sale, or make available for sale any marijuana or cannabis plants.

D.C. Law 20-153, § 2(a) (codified at D.C. Code § 48-904.01(a)(1)). Second, the amended statute excluded from the definition of "controlled substance" and "controlled substances" throughout the District of Columbia Code "[m]arijuana that is or was in the personal possession of a person 21 years of age or older at any specific time if the total amount of marijuana that is or was in the possession of

that person at that time weighs or weighed 2 ounces or less," certain marijuana plants, and certain marijuana produced by those plants. *Id.* § 2(b) (codified at D.C. Code § 48-904.01(a)(1A)(A)). This provision qualified that the definition of "controlled substances" still "shall include any marijuana or cannabis plant sold or offered for sale or made available for sale." *Id.* (codified at D.C. Code § 48-904.01(a)(1A)(B)). These amendments went into effect in 2015. *See id.* § 5.

## III.    Analysis

Mr. Kornegay argues that his conviction for PWID is invalid because the 2015 amendments to D.C. Code § 48-904.01, both in subparagraph (a)(1)(A) and in paragraph (a)(1A), make it lawful for an adult to possess two ounces or less of marijuana, even if that individual has the intent to distribute. We review questions of statutory interpretation de novo.[7] *Peterson v. United States*, 997 A.2d 682, 683 (D.C. 2010). Our aim is "to ascertain and give effect to the legislature's intent."

---

[7] In its brief, the government raises, but does not advance, an argument that plain error, rather than de novo, review applies. As we explained in *Carrell v. United States*, 165 A.3d 314 (D.C. 2017) (en banc), however, "it is well settled in this jurisdiction that a full range of challenges to the sufficiency of the evidence are automatically preserved at a bench trial by a defendant's plea of not guilty . . . [including] challenges to the requisite elements of the crime." *Id.* at 326 (citation and internal quotation marks omitted).

*Lopez-Ramirez v. United States*, 171 A.3d 169, 172 (D.C. 2017) (internal quotation marks omitted). Our "primary index" is the plain language of the statute, *id.*, which we examine holistically, "account[ing] for [its] full text, language as well as punctuation, structure, and subject matter," *Hood v. United States*, 28 A.3d 553, 559 (D.C. 2011) (internal quotation marks omitted); *accord Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) ("The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that [they] ha[ve] used." (internal quotation marks omitted)).

D.C. Code § 48-904.01(a)(1) makes it "unlawful for any person knowingly . . . to . . . possess[] with intent to . . . distribute[] a controlled substance." But subparagraph (a)(1)(A), a product of the 2015 amendments to the statute, by its plain language carves out an exception from the crime of possession and provides that "it shall be lawful, and shall not be an offense . . . for any person 21 years of age or older to . . . [p]ossess . . . marijuana weighing 2 ounces or less." D.C. Code § 48-904.01(a)(1)(A). The crime of possession with intent to distribute marijuana requires the government to prove (1) the elements of possession, namely that the defendant "knowingly exercise[d] direct physical custody or control over" an illegal amount of that substance, *Johnson v. United States*, 40 A.3d 1, 14 (D.C.

2012) (internal quotation marks omitted); *see also Rivas v. United States*, 783 A.2d 125, 129 (D.C. 2001) (en banc) (defining the elements of constructive possession), and (2) as an additional element, a defendant's purpose to distribute the amount possessed. At least in the absence of some contrary provision of law, the language of § 48-904.04(a)(1)(A) would naturally be understood to mean that possession of two ounces or less of marijuana is no longer a crime, without regard to whether the possessor intended to distribute the marijuana.

The government argues, however, that the 2015 amendments to the D.C. Code § 48-904.01 decriminalized only possession of marijuana for "personal use." According to the government, "[o]nce someone forms the intent to distribute marijuana, that person has ceased to possess the marijuana merely for personal use" as authorized by the 2015 amendments. The weakness in this argument is that the words "personal use" do not appear in D.C. Code § 48-904.01; they are found only in the legislative history of the 2015 amendments, such as it exists, in the summary statement of the voter initiative. *Cf. Zukerberg v. Bd. of Elections & Ethics*, 97 A.3d 1064, 1076 n.68 (D.C. 2014) (explaining that a ballot summary may be a means of discerning the voting public's intent).

Although we look to legislative history to "resolve a genuine ambiguity or a claim that the 'plain meaning' [of statutory language] leads to a result that would be absurd, unreasonable, or contrary to the clear purpose of the legislation," *Hood*, 28 A.3d at 559, we neither discern any ambiguity in the statute regarding the conduct it defines as lawful, nor do we see any unreasonableness in reading the statute as written. Intent to distribute is almost always inferred from the circumstances of possession. *See Abdulshakur v. District of Columbia*, 589 A.2d 1258, 1263 (D.C. 1991) (observing that "[i]ntent is a state of mind, and must ordinarily be proved circumstantially"). But the legislative history of the Marijuana Possession Decriminalization Amendment Act of 2014 reflects that the Council was concerned about the reliance on circumstantial evidence that could be fully consistent with personal use, particularly in the communities that have been disproportionately targeted with marijuana arrests. *See* Marijuana Possession Decriminalization Amendment Act of 2014, D.C. Council, Report on Bill 20-409, at 10–11 (2014) (explaining that "[t]oo many marijuana users have been accused of distribution merely because they carry their marijuana in a particular way or because they don't have a bank account" and "routinely carry monthly rent payments or other large payments in cash on their person"). Thus, one could reasonably conclude that, in order to shield from prosecution possession of less

than two ounces of marijuana, it is necessary to make it lawful to possess that amount even if intent to distribute could also be established.

Our discussion of D.C. Code § 48-904.01(a)(1) does not end here, because the exception to the statute that makes it generally lawful to possess less than two ounces of marijuana (with or without the intent to distribute) is itself subject to an exception: Section 48-904.01(a)(1)(D) contains the proviso that "nothing in this subsection shall make it lawful to sell, offer for sale, or make available for sale any marijuana or cannabis plants." We acknowledge that, both in the statute as enacted[8] and as codified, this exception-within-an-exception is typographically located within subparagraph (D) (making lawful the possession of only a subset of cannabis,[9] specifically, marijuana grown from cannabis plants lawfully possessed within the home, as described in subparagraph (C)). But the text of this exception-

---

[8] Legalization of Possession of Minimal Amounts of Marijuana for Personal Use Initiative of 2014, D.C. Law 20-153, § 2(a) (2014).

[9] "[C]annabis" is defined under D.C. law as "all parts of the plant genus Cannabis, including both marijuana and hashish defined as follows," while the term "marijuana" as defined refers specifically to "the leaves, stems, flowers, and seeds of all species of the plant genus Cannabis, whether growing or not." D.C. Code § 48-901.02(3); *see Hood*, 28 A.3d at 559 ("[W]hen a legislature defines the language it uses, its definition is binding upon the court . . . ." (internal quotation marks omitted)).

within-an-exception plainly refers to the entirety of § 48-904.01(a).[10]  Accordingly, we understand § 48-904.01(a)(1) to permit an adult to possess two ounces or less of marijuana regardless of their intent, so long as that adult does not "sell, offer for sale, or make available for sale" the marijuana.

Because the government has not argued that the language "sell [or] offer for sale" in D.C. Code § 48-904.01(a)(1)(D) has any relevance to this case, we focus exclusively on the meaning of "make available for sale."  This phrase is not defined in the D.C. Code.  We thus construe the words in this phrase "according to their ordinary sense and with the meaning commonly attributed to them."[11]  *Tippett*

---

[10]  Further it would make little sense to apply this language only to conduct discussed within subparagraph (D) instead of all of the lawful activities enumerated in subparagraphs (A) through (D).  By contrast, subparagraph (C) contains a different exception-within-the-exception, but, as it clarifies the specific conduct made lawful in that subparagraph (possession of cannabis plants within one home when more than one person lives and cultivates cannabis in the residence), we do not read that exception to apply to the entirety of paragraph (a)(1).  *See* D.C. Code § 48-904.01(a)(1)(C).

[11]  The parties did not cite, and we could not find, any analogs to this phrase in other laws decriminalizing marijuana possession that illuminate its meaning here.  Of the states that have legalized use of marijuana, only three use the language "made available for sale" in their marijuana regulations.  The Colorado constitution, which was amended in 2012, sets out which acts are no longer criminal offenses under Colorado law and provides that marijuana plants may be possessed so long as the plants and the marijuana grown from the plants are not "made available for sale."  Colo. Const. art. 18, § 16(3)(b).  California and Michigan regulations that post-date D.C.'s 2015 amendments contain specific rules

(continued…)

*v. Daly*, 10 A.3d 1123, 1126 (D.C. 2010) (en banc) (internal quotation marks omitted). According to its ordinary sense, the phrase "make available for sale" signals that a defendant must at the very least take some action beyond possession.

We need not define the precise nature of the conduct that constitutes "mak[ing marijuana] available for sale," because the government presented no evidence at trial that Mr. Kornegay engaged in any conduct, beyond possession, that could possibly be characterized as his making the marijuana in his possession available for sale. The evidence established that Mr. Kornegay was driving his vehicle when the officers pulled him over and found marijuana in the car and on his person. As a matter of law, this evidence by itself did not establish that Mr. Kornegay was making the marijuana available for sale at the time of his arrest.

To respond to the government's arguments, however, we must explain what "making available for sale" is not. The government argues that the "making available for sale" exception-within-the-exception for possession of two ounces or less of marijuana is satisfied if there is evidence that an individual has decided to

---

(…continued)
for marijuana "made available for sale" at temporary marijuana or cannabis sales events. Cal. Code Regs. tit. 16, § 5602(i)–(j) (2020); Mich. Admin. Code r. 420.27(11) (2020).

sell the marijuana in his possession to another person. The government's interpretation criminalizes an act that the statute says is not criminal (possession of less than two ounces) by virtue of a person's merely conceiving of selling that marijuana for even a fleeting moment. But no one would say that someone who possesses an object—e.g., a home, a car, a piece of furniture—has made it available for sale simply by *thinking* about selling it. More than mere thought, the "ordinary sense" of the phrase requires some action. *Tippett*, 10 A.3d at 1127.

Alternatively, the government argues that possessing marijuana in packaging (in this case in clear plastic bags) suffices as conduct to "make marijuana available for sale." Without more, we are unpersuaded by this argument also. The act of putting any object that might be sold, or is even intended for sale, into a container is not commonly understood as making that object available for sale. For example, a person making lemonade does not make it available for sale simply by virtue of pouring it into paper cups. They are merely packaging the lemonade in a such way that it could be sold, but they would have to take some sufficient additional action or actions to communicate the availability of lemonade for purchase.[12]

---

[12] We do not mean to suggest that "making available for sale" is equivalent to "offering for sale," but we need not explore the precise distinction between the two in this case.

Accordingly, we hold that reliance on generic packaging alone will not suffice to show that marijuana was "ma[d]e available for sale" within the meaning of D.C. Code § 48-904.01(a)(1)(D).

Our dissenting colleague concludes that Mr. Kornegay made the marijuana available for sale because (1) Mr. Kornegay possessed the marijuana with intent to sell it; (2) the marijuana was packaged so it could easily be sold; and (3) inferentially, he had previously sold marijuana. *See post* at 20. Even taking those circumstances as adequately supported by the evidence, we conclude that they fall short of making the marijuana available for sale. Our colleague describes Mr. Kornegay's car as a "mobile marijuana store," but there is no evidence in the record either that Mr. Kornegay had previously sold marijuana from his car or that he had arrangements to do so in the future. *Id.* Finally, we do not share our dissenting colleague's view that it is hard to imagine what more Mr. Kornegay could have done, short of actually offering the marijuana for sale, to make the marijuana available for sale. For example, the government could have presented evidence that he actually was using the car as a point of sale, that he was driving the car to a location where he hoped to find customers, or that he sent a confederate out on foot to look for customers to bring back to the car to purchase marijuana. No such evidence was presented here.

Based on our understanding of the plain language of D.C. Code § 48-904.01(a)(1), Mr. Kornegay did not commit the crime of possession with intent to distribute marijuana. Mr. Kornegay was old enough to legally possess a lawful amount of marijuana, the amount he possessed did not exceed the limit under the law, and he did nothing that could be construed as making the marijuana he possessed available for sale so as to render his conduct unlawful. Accordingly, we conclude that Mr. Kornegay's PWID conviction cannot stand.

We have conducted this analysis under § 48-904.01(a)(1), but the government suggests that Mr. Kornegay's conviction for PWID can be upheld under § 48-904.01(a)(1A). That provision carves out from the definition of "controlled substances" marijuana weighing two ounces or less "in the personal possession" of a person twenty-one years of age or older, D.C. Code § 48-904.01(a)(1A)(A), but excepts (and thus keeps within the definition of a controlled substance) marijuana "sold or offered for sale or made available for sale." D.C. Code § 48-904.01(a)(1A)(B).[13] The government reasons that the marijuana was

---

[13] This provision is not surplusage in light of D.C. Code § 48-904.01(a)(1)(D) because this paragraph amends the definition of "controlled substance" and "controlled substances" throughout the District of Columbia Code, including, for example, in D.C. Code § 48-903.02, which requires anyone manufacturing, dispensing, or distributing a controlled substance to register annually with the Mayor. *See Feaster v. Vance*, 832 A.2d 1277, 1283 (D.C. 2003)

(continued…)

still a controlled substance since it was no longer "in [his] personal possession" by dint of his stated intent to give it to others, adverting back to its "not-for-personal-use" argument, *see supra* pages 10–12.

We need not precisely define the bounds of "personal possession" here.[14] For the purposes of this case, we are satisfied that nothing in § 48-904.01(a)(1A) undermines the conclusion we have previously reached: even if we were to assume for purposes of discussion that the marijuana at issue was not in Mr. Kornegay's "personal possession"—a proposition of which we are doubtful, given that it was found in Mr. Kornegay's pants and within his immediate reach in the driver's side door, *see Johnson*, 40 A.3d at 14—that would only mean that the marijuana met the legal definition of "marijuana" for purposes of D.C. Code § 48-904.01(a)(1). It would not mean, or even tend to imply, that Mr. Kornegay was

---

(…continued)
(explaining that, when interpreting a statute, "each provision of the statute should be construed so as to give effect to all of the statute's provisions" (internal quotation marks omitted)).

[14] We note that the government's interpretation of D.C. Code § 48-904.01(a)(1A)(A)(i) is in tension with subparagraph (a)(1A)(B). If the exclusion of two ounces of marijuana from the definition of "controlled substance" under (a)(1A)(A)(i) did not apply if an individual had an intent to sell it, it would undercut (a)(1A)(B), which states that the exclusions of marijuana and cannabis plants from the definition of a "controlled substance" detailed under (a)(1A)(A)(i–iii) extend up to the point that the marijuana or cannabis plants are "sold or offered for sale or made available for sale."

making the marijuana available for sale at the time of his arrest such that his conduct violated the statute, especially since "made available for sale" in D.C. Code § 48-904.01(a)(1A)(B) is likely to have the same definition as "make available for sale" does in D.C. Code § 48-904.01(a)(1)(D).

## IV.

Under D.C. Code § 48-904.01(a)(1)(A), Mr. Kornegay's possession of 1.73 ounces of marijuana was not criminal as a matter of law. Accordingly, we reverse the judgment of the trial court and remand for the trial court to vacate Mr. Kornegay's conviction.

*So ordered*.

STEADMAN, *Senior Judge*, dissenting: To my mind, the determinative aspect of this appeal is the applicability to this case of the exception in D.C. Code § 48-904.01(a)(1)(D) relating to "make available for sale." I disagree with my colleagues' conclusion on that point.

This phrase in context applies to action that is short of an "offer to sell" and

yet is prohibited. But how short? The statutory language and the legislative history, such as it is, appear to reflect a determination to continue banning the commercial distribution of marijuana. In my view, at the very least, when the marijuana has been transmuted into a format and product that is readily available for sale in the usual way and is possessed in circumstances where such a sale can readily be effectuated, and with the intent to make such a sale, it has been made available for sale within the meaning of the statute.

The evidence is to be looked at as a whole, not piece by piece. In this case, appellant was found in his car in possession of three packets of marijuana packaged in a manner ready for sale, two of which were concealed in his "groin area." He had a supply of additional packets at hand. He had in his pocket a sizable amount of cash in multiple denominations. And, importantly, he had under his seat a weighing device containing marijuana residue. An expert testified that all these circumstances were consistent with a typical seller of marijuana. Appellant's car was effectively a mobile marijuana store. It is hard to imagine what more could be done with the marijuana that would make it "readily available for sale" without an actual offer of sale. I respectfully dissent.