Charles W. WASHINGTON, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 86–1638.

District of Columbia Court of Appeals.

Argued Oct. 14, 1987.
Decided March 15, 1988.

Sidney R. Bixler, Washington, D.C., appointed by the court, for appellant.

Mary L. Wilson, Asst. Corp. Counsel, with whom Frederick D. Cook, Jr., Acting Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before NEWMAN and BELSON, Associate Judges, and GALLAGHER, Senior Judge.

BELSON, Associate Judge:

In this case of first impression, appellant challenges his conviction for driving while intoxicated. D.C. Code § 40–716(b)(1) (1986). This court has not previously had occasion to address the so-called "per se" provision of § 40–716(b)(1), which classifies as "intoxicated" a person who drives a vehicle while his or her blood contains at least .10 percent, by weight, of alcohol. Appellant raises two issues on appeal. First, he contends that the trial court deprived him of his Sixth Amendment right to confrontation by denying his request that the government produce at trial the technician who tested him to determine his blood alcohol content. Second, he maintains that the trial court refused to consider evidence that contradicted the test results, thereby denying him due process of law. We find no error, and thus affirm.

I

Appellant was arrested on May 12, 1986, and charged by information with driving while intoxicated, in that he "operate[d] ... a vehicle while his blood contained at least .10 percent, by weight, of alcohol ..." in violation of D.C.Code § 40–716(b)(1). That statute provides in pertinent part that

[n]o individual shall, when the individual's blood contains .10 percent or more, by weight, of alcohol (or when an equivalent quantity of alcohol is contained in at least 2,000 cubic centimeters of his breath) ... operate or be in physical control of any vehicle in the District.

The two breath tests administered to appellant indicated that his blood alcohol level at the time he was driving exceeded .10 percent.

On September 9, 1986, thirteen days before trial, appellant's attorney served on the Corporation Counsel a "Motion That District's Breathalyzer Expert Be Avai[la]ble For Trial." This motion, made pursuant to D.C.Code § 40–717.2 (1986),[1]

---

1. D.C.Code § 40–717.2 provides that:

An official copy of the results of any blood, urine, or breath test performed on a person by a technician or by a police officer shall be admissible as substantive evidence, without the presence or the testimony of the technician or of the police officer who administered the test, in any proceeding in which that person is charged with a violation of § 40–716(b): Provided, that the police officer or the technician certifies that the breath test was conducted in accordance with the manufacturer's specifications, and that the equipment on which the breath test was conducted has been tested within the past 3 months and has been found to be accurate or, in the case of a blood or urine specimen, that the testimony has been certified to be accurate by the chief toxicologist, Office of the Chief Medical Examiner or his or her designee: Provided, further, that the person on whom any blood, urine, or breath test has been performed, or

cited no reason for the request. In fact, it did not ask specifically that the technician who administered the breath test be the one to testify.

■ The case came on for nonjury trial on September 22, 1986. Although the District of Columbia did not respond in writing to appellant's motion, it did oppose the motion in open court prior to the commencement of trial. At that juncture, for the first time, appellant's attorney stated that appellant had requested the presence of the technician because he wished to challenge the accuracy of the machine's calibration. Appellant argued that he intended to prove through the technician's testimony that the readings he was given could not have been accurate because appellant had not consumed enough alcohol to achieve the scores that were registered, and that the difference between his two test results was so great that it demonstrated that the machine had not been working properly. The court denied the motion on the ground that the technician, who merely operated the machine, was unqualified to interpret the test results and to testify about oxidation of alcohol in the blood stream.[2]

At trial, the government presented one witness, Officer Donald William Bryant of the Metropolitan Police Department, the arresting officer. Officer Bryant testified that in the early morning hours of May 12, 1986, he stopped appellant, who was driving in the 2700 block of Rhode Island Avenue, N.E., because appellant's car was "straddling the lanes." After pulling appellant over, Officer Bryant noticed that appellant had a faint odor of alcohol on his breath. The officer asked appellant to perform two field sobriety tests, which, in his opinion, appellant performed poorly. Officer Bryant then arrested appellant and transported him to the Traffic Division for a blood alcohol test.

At the Traffic Division, appellant was given two breath tests on the Intoxilyzer 5000 to determine his blood alcohol content. The test results were introduced into evidence through the Chemical Test Certification Form and the Implied Consent Form, both of which were filled out and signed at the time appellant was tested. Officer Bryant, who had witnessed the tests and the signing of the forms, authenticated them. These forms showed that in appellant's initial test, administered approximately one hour and fifteen minutes after he was stopped, appellant received a blood alcohol reading of 0.13 percent. Thirty-four minutes later, in a second test, appellant registered a reading of 0.11 percent. The Chemical Test Certification Form indicated that the particular machine used to test appellant had been certified for accuracy twenty-five days earlier and had undergone a "simulator test" within the preceding twenty-four hours.

After Officer Bryant's testimony, the government rested. Appellant, the sole witness in his defense, testified that he had consumed only two drinks that night, a beer and a rum and coke, three to four hours before he was stopped. Appellant explained that if his car was "straddling the lanes," as Officer Bryant had testified, the problem was caused by a faulty hub bearing on the right front wheel, not by his consumption of alcohol.

The court, noting that it was undisputed that appellant was driving in the District at

that person's attorney, may seek to compel the attendance and the testimony of the technician or of the police officer in any proceeding by stating, in writing, the reasons why the accuracy of the test result is in issue and by requesting, in writing, at least 15 days in advance of the proceeding, that such technician or such police officer appear and testify in the proceeding. Any such person upon whom a blood, urine, or breath test is performed, shall be informed, in writing, of the provisions of this section at the time that such person is charged. After having been informed, failure to give timely and proper no-

tice shall constitute a waiver of the person's (on whom the test has been performed) right to the presence and testimony of the technician or the police officer.

2. After being found guilty, appellant claimed that he had requested the technician because his scores may have been confused with those of another person being tested at the same time. The trial court did not err in refusing to consider this assertion, however, because appellant failed to offer evidence to support it and did not raise it in timely fashion.

the time of his arrest, and that the test equipment used to test appellant's breath had been certified for accuracy shortly before the tests were given, found appellant guilty of driving while his blood alcohol content was in excess of .10 percent,[3] in violation of the so-called "per se" provision of D.C.Code § 40–716(b)(1).

## II

We first address appellant's argument that the trial court interpreted § 40–717.2 too narrowly, thereby depriving him of his Sixth Amendment right to confront and cross-examine the technician. Appellant points out that § 40–717.2 is a notice provision, requiring that a defendant who wishes to cross-examine the technician notify the District of his desire to have the technician present and state the reasons for his request. He contends that nothing in the statute requires or even allows the trial court to inquire into the sufficiency of the reason stated. Thus, he argues, if the request is made and is accompanied by any stated reason, the court must compel the presence of the technician.

Section 40–717.2 was enacted as part of the Anti-Drunk Driving Act of 1982, D.C.Law 4–145. Prior to the enactment of the statute, technicians were required to be available for every drunk driving trial, even though they seldom were called to testify. This particular section was adopted on the recommendation of the Metropolitan Police Department to obviate the need for the technician's presence at trial unless the technician was going to be called as a witness. Council of the District of Columbia, Committee Report on Bill 4–389, the "Anti–Drunk Driving Act of 1982," at

1, 4 (May 5, 1982) (hereinafter Committee Report). In lieu of the technician's presence or testimony, the statute allows evidence of a blood alcohol test to be introduced at trial through an official copy of the test results, provided the technician has certified that the test was conducted properly and that the equipment used was tested and determined to be accurate within the preceding three months.[4]

 Neither the Committee Report nor the statutory language itself addresses the particular circumstances under which a trial court should grant a defendant's request for the presence of the technician. We note that the language of § 40–717.2 requires in general terms a statement of "the reasons why the accuracy of the test result is in issue." Thus, more than a mere request for the technician is necessary. A defendant must affirmatively state why he challenges the test result. The statement of reasons for requesting the technician's testimony allows the parties and the court to focus the issues for trial and, thus, conserves judicial and police resources, a concern of the Council in drafting the overall legislation. *See* Committee Report, *supra,* at 4, 9; *see also id.,* Attachment B, testimony of Captain Layfield on Bill 4–389 at 4, 9. The statement of reasons also enables the court to determine whether the technician is competent to testify on the matters at issue.[5] Such a requirement does not pose an unreasonable burden on a defendant. Moreover, as the District of Columbia points out in its brief, pretrial discovery affords a defendant a means to inspect the testing equipment and to review the results of other tests taken by that machine.

---

3. In making his finding of guilt under the "per se" statutory provision under which appellant was charged, the trial judge observed that he thought he would *not* have found appellant guilty of "driving under the influence" on the basis of the evidence presented. The government, it should be noted, did not attempt to prove appellant guilty of driving while "under the influence" or "impaired" by adducing evidence other than test results relevant to those conditions, nor was appellant charged with driving while in either such condition. Rather, the government had addressed its proof to the "per se" violation with which appellant was charged.

4. Appellant does not challenge the admissibility of the test results.

5. While the appellant had not requested the presence of any particular technician, and the trial judge accordingly was not ruling on the competence of any particular individual as a witness, the trial judge reasonably assumed that a police technician would not have the special expertise required to testify concerning oxidation of alcohol in the blood stream or the interrelation between the machine's calibration and the actual presence of alcohol in the body.

■ Although appellant argues that the trial court should enforce any request that meets the facial requirements of the statute, his own written notice was deficient in several ways. Not only was it untimely, because it was served only thirteen days before trial, rather than the fifteen days required by the statute, but it also failed to give any reasons for requesting the testimony of the technician. Furthermore, it asked for a "breathalyzer expert" rather than the technician specified in the statute. Under these circumstances, appellant had no right to expect the presence of the technician when trial commenced.

■ Nevertheless, the trial court thoroughly questioned appellant about his reasons for requesting the presence of the technician before denying the request on the ground that a technician was not competent to testify on the issue raised. The trial court did not err in so ruling.[6] A trial court has the duty to consider whether a witness is competent to testify and, if not, to disallow the testimony. *See, e.g., Hinnant v. United States*, 520 A.2d 292, 293 (D.C.1987) ("The trial court has broad discretion to admit or exclude expert testimony, and its decision either way will not be disturbed on appeal unless it is manifestly erroneous"); *O'Neil v. Bergan*, 452 A.2d 337, 344 (D.C.1982) (trial court properly refused to allow the testimony of a witness who had no personal knowledge of the events in issue); *Fennekohl v. United States*, 354 A.2d 238, 240–41 (D.C.1976) (trial court did not err in excluding expert testimony where witness "failed to exhibit 'sufficient skill, knowledge, or expertise' in the area" (citation omitted)); *Womack v. United States*, 111 U.S.App.D.C. 8, 10, 294 F.2d 204, 206, *cert. denied*, 365 U.S. 859, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961) (testimony properly excluded where no showing or proffer that witness was qualified to testify as an expert).

■ Here, it was clear that appellant sought the testimony of an expert on oxidation of alcohol in the blood stream and an expert on how the equipment determines blood content from a sample of breath. A technician who merely operates the equipment could not reasonably be expected to qualify as an expert in either area. We hold that the trial court did not abuse its discretion in denying appellant's request for the technician's testimony.[7]

■ Finally, we observe that nothing in § 40–717.2 prevented appellant from serving a subpoena on the technician in order to obtain the technician's testimony. Even though appellant's request for the technician was denied, the statute did not preclude him from confronting and cross-examining the technician.[8] *Cf. Howard v. United States*, 473 A.2d 835, 889 (D.C. 1984) (confrontation rights effectively preserved when Drug Enforcement Agency chemical analysis admitted without presence of chemist in view of defendant's ability to subpoena the chemist). There was, accordingly, no violation of appellant's Sixth Amendment right of confrontation.

### III

■ Appellant also asserts that, in reaching his trial finding, the trial judge failed to consider evidence of appellant's sobriety, *viz.*, that he had consumed only two alcoholic drinks that evening and that the cause of his "straddling the lanes" was a faulty hub bearing on his car, thereby giving conclusive effect to the breath test results in violation of procedural due process. After reviewing the record, we are

6. Because the issue of waiver was not raised either at trial or on appeal, we decide the case on the merits of the judge's ruling on the motion rather than on the waiver provision of § 40–717.2.

7. By so holding, we do not suggest that the technician cannot be compelled to attend trial pursuant to § 40–717.2 if the defendant seeks to inquire into matters about which the technician is competent to testify, *e.g.*, whether the test equipment was functioning correctly or the technician operated the equipment properly in administering the test.

8. Appellant also argues that, by requiring him to state a reason for his request, the statute effectively forced him to reveal his defense before trial. Appellant could have avoided this problem by using a subpoena to compel the testimony of the technician rather than submitting a written request under § 40–717.2.

satisfied that the trial judge did not treat the breath test results as irrebuttable evidence of intoxication. Rather, he indicated that, because he found that appellant's blood alcohol content was in excess of the .10 percent specified in the "per se" provision, it became irrelevant whether appellant was driving erratically, whether a defect in his automobile caused it to weave, or whether appellant's comprehension was clear at the time he drove.

■ The text of D.C.Code § 40–716(b)(1) sets forth two distinct ways in which a person may be found to have violated that statute.[9] To establish that a person is guilty of one of them, the so-called "per se" offense of driving "while intoxicated" with which appellant was charged in the information, the District is required to prove only that the person was operating a vehicle in the District of Columbia while the person's blood contained .10 percent or more alcohol (or while the person's urine contained .13 percent or more alcohol). The pertinent language of the statute allows blood alcohol content to be proved by the results of a blood, urine, or breath test, performed on equipment which has been checked for accuracy as required by the statute. D.C.Code §§ 40–716(b)(1), –717.2. As the trial judge observed, evidence of the defendant's impairment, such as weaving from lane to lane, is unnecessary for a conviction of the "per se" offense of driving with .10 percent or more blood alcohol content. It is important to emphasize the distinction between the "per se" offense, just described, and the offense of driving "under the influence," proof of which is the second distinct way of establishing guilt of § 40–716(b)(1). A conviction for driving "under the influence" can rest on an accu-

mulation of evidence other than a test result showing .10 percent blood alcohol content, e.g., evidence of erratic driving by the accused, slurred speech, odor of alcohol on the breath, and evidence of a blood alcohol content of .05 percent or more. D.C.Code § 40–717.1(2) (1986). See Committee Report, supra, at 4. No evidence of intoxication, other than a showing of blood alcohol content of .10 percent or more, is required to establish a "per se" violation because the Council has determined, on the basis of objective scientific evidence, that any person whose blood is comprised of .10 percent or more alcohol is too intoxicated to operate a motor vehicle safely. Other states have enacted similar statutes. The great weight of authority, which we join, recognizes that the legislature has the power to make operating a motor vehicle a crime for one whose blood alcohol content is .10 percent or more. See State v. Zito, 11 Kan.App.2d 432, 724 P.2d 149, 151–52 (1986) ("per se" criminal violation to operate motor vehicle with .10 percent or greater blood alcohol content; no showing of erratic or impaired driving required); Scherlie v. State, 689 S.W.2d 294, 296 (Tex. App. 1 Dist.1985) (an offense to operate motor vehicle while one's blood alcohol content is .10 percent or more does not create unconstitutional irrebuttable presumption; once the proscribed level has been established, "there is nothing ... to presume" and the offense has been established); State v. Tanner, 15 Ohio St.3d 1, 472 N.E. 2d 689, 693–94 (1984) (same); Fuenning v. Super.Ct. in & for County of Maricopa, 139 Ariz. 590, 680 P.2d 121, 126–27 (1983) (statute making it offense to operate motor vehicle when blood alcohol content is .10 percent or more not void on substantive due process, equal protection or procedural

9. D.C.Code § 40–716(b)(1) provides as follows:
No individual shall, when the individual's blood contains .10 percent or more, by weight, of alcohol (or when an equivalent quantity of alcohol is contained in at least 2,000 cubic centimeters of his breath), or defendant's urine contains .13 percent or more, by weight, of alcohol, or under the influence of intoxicating liquor or any drug or any combination thereof, operate or be in physical control of any vehicle in the District. Any individual violating any provision of this

paragraph shall, upon conviction for the 1st offense, be fined an amount not to exceed $300 or imprisoned for not more than 90 days or both; upon conviction for the 2nd offense within a 15–year period, be fined an amount not to exceed $5,000 or imprisoned for not more than 1 year or both; and upon conviction for the 3rd or any subsequent offense within a 15–year period, be fined an amount not to exceed $10,000 or imprisoned for not more than 1 year, or both. (Emphasis supplied.)

due process (irrebuttable presumption) grounds). Appellant has not argued otherwise.

■ This is not to say, however, that a test result of .10 percent or more blood alcohol content is irrebuttable evidence of violation of D.C.Code § 40–716(b)(1). To the contrary, the trier of fact must also consider any evidence that the testing device was not functioning or not being operated properly, as well as any other relevant evidence tending to show that the accused did not have as much as .10 percent blood alcohol content, *e.g.,* evidence that he had not consumed enough alcohol in the relevant time period to reach that level, or evidence of behavior inconsistent with such a blood alcohol level. *Cf. Denison v. Anchorage,* 630 P.2d 1001, 1003 (Alaska App. 1981) ("admissibility of evidence of actual sobriety offered to rebut the accuracy of a breathalyzer result stands on the same footing as any other type of relevant circumstantial evidence" where statute makes it crime to operate motor vehicle when one's blood alcohol content is .10 percent or more). But if, having considered the relevant evidence, the trier of fact becomes convinced that a defendant's blood alcohol was at or above the .10 percent level, evidence that the defendant did not drive or otherwise behave like an intoxicated person will not tend to disprove the charge.

In the instant case, the trial judge admitted into evidence, *inter alia,* the defendant's testimony concerning a mechanical problem with the right front wheel of his car and the limited amount of alcohol he had consumed. He expressly left it open to appellant to offer further evidence to prove he was not intoxicated. At the close of evidence, the judge, sitting as trier of fact, concluded that the government had proved the elements of driving while intoxicated, as charged. After observing that appellant's operation of his car in the District of Columbia was not in dispute, the trial court determined that the government had met its burden of proving that appellant's blood alcohol content at the time exceeded .10 percent. In reaching this conclusion, the court credited the evidence that the testing equipment had been checked for accuracy shortly before appellant was tested and that appellant's test results were above .10 percent.

Appellant is correct, as we have explained, in arguing that the factfinder must consider evidence opposing the breath test readings. As we read this record before us, it does not indicate that the trial judge failed to consider that evidence. Rather, he made a finding that was supported by the evidence. It is apparent that appellant's evidence was not such as to preclude the finder of fact from accepting the breath test results as accurate. Testimony that one's erratic driving was due to a faulty hub bearing does not necessarily overcome evidence of excessive blood alcohol content. In addition, appellant offered no evidence to prove that one cannot achieve the readings he received after consuming only the amount of alcohol he admitted drinking. Significantly, the trial judge did not state that if appellant's *test results* were .10 percent or greater, his claimed lack of impairment and the quality of his driving did not matter. Rather the judge indicated that appellant's capability and manner of driving were immaterial to the offense charged given the trial court's finding that appellant *had* a blood alcohol content greater than .10 percent.

We hold that no error vitiates the trial court's judgment that appellant was guilty of operating a motor vehicle while he had a blood alcohol content exceeding .10 percent.

Accordingly, the conviction on appeal is affirmed.