**Preston WILLIAMS, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 87–1160.

District of Columbia Court of Appeals.

Submitted Jan. 24, 1989.

Decided May 12, 1989.

Mark Stier, Washington, D.C., appointed by this court, was on the brief, for appellant.

Mary L. Wilson, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before NEWMAN, FERREN, and STEADMAN, Associate Judges.

FERREN, Associate Judge:

Appellant was convicted, after a bench trial, of driving while intoxicated. D.C. Code § 40–716(b)(1) (1986). Appellant filed this timely appeal claiming (1) the evidence was insufficient to support his conviction of the *per se* offense of driving while intoxicated because the government failed to prove that the sample used to test for intoxication contained at least 2,000 cubic centimeters of appellant's breath; (2) the

results of his breath test were inadmissible because the test methodology had not been shown to be generally accepted in the scientific community; and (3) there was an impermissible variance between the information charging appellant with the crime and the evidence at trial. We affirm.

## I.

At trial, Officer Harding testified that on April 23, 1987, at 8:40 p.m., he observed appellant driving a car very slowly without the headlights on. Harding pulled appellant over and observed that appellant's breath smelled of alcohol and that appellant's eyes were watery. Harding administered three psychomotor tests for sobriety, which appellant did not perform successfully. Harding then arrested appellant for driving while intoxicated and drove him to the Traffic Enforcement Branch, where Harding administered two breath tests. The court admitted into evidence a certificate containing the test results, over defendant's objection. The tests showed that appellant's blood alcohol content was .13 percent. On cross-examination, Officer Harding testified that the notation "DS" next to the test results meant "deficient sample." He testified that this meant Williams' test scores were still rising when Williams stopped blowing into the machine. Harding further testified, on questioning by the court and without defense objection, that the test scores would not have been lower had the samples been "sufficient." The trial court found appellant guilty of the *per se* offense of driving while intoxicated.

## II.

Appellant principally argues that the *per se* offense of driving while intoxicated when proved through the use of a breath test, requires proof that at least 2,000 cubic centimeters of breath were tested. Appellant bases his argument on the language of D.C.Code § 40–716(b)(1) (1986), which prohibits operating a vehicle in the District

"when the individual's blood contains .10 percent or more, by weight, of alcohol (or when an equivalent quantity of alcohol is contained in at least 2,000 cubic centimeters of his breath)...." Appellant argues that the language "at least 2,000 cubic centimeters of his breath" establishes the minimum size of the breath sample. We disagree.

Neither the statutory language nor the legislative history is helpful in determining the meaning of this section. *See Peoples Drug Stores v. District of Columbia,* 470 A.2d 751 (D.C.1983) (en banc) (courts look first to statutory language and then, if the statutory language is ambiguous, to legislative history, when interpreting statutes); *Citizens Ass'n of Georgetown v. Zoning Comm'n,* 392 A.2d 1027, 1032–33 (D.C. 1978) (same). The language of the statute is ambiguous because it could mean either (1) that the equivalent of .10 percent of alcohol in the blood, by weight, must be found in a sample of 2,000 cubic centimeters of breath, or (2) that the test—by use of a conversion scale that makes the sample size largely irrelevant—must reveal that at least 2,000 cubic centimeters of breath would contain a concentration of alcohol equivalent to .10 percent of alcohol in the blood, by weight.[1]

We cannot accept appellant's interpretation of this statutory language because his interpretation creates an "absurd result." *See Peoples Drug Stores,* 470 A.2d at 754. A sample size of 2,000 cubic centimeters is unreasonably large. The volume of air that is breathed in and out during a normal respiratory cycle is only 500 cubic centimeters. 4A GRAY'S ATTORNEYS' TEXTBOOK OF MEDICINE ¶ 205.41(1)(a) (1970). Total lung capacity after forced inspiration is 6,000 cubic centimeters of which only 4,800 cubic centimeters can be expelled by forced expiration. *Id.* A requirement that the police use a sample size of 2,000 cubic centimeters is absurd in light of the average individual's lung capacity. Machines that test breath use a much smaller sample. The

---

1. There is no relevant legislative history to explain this provision. *See* Committee on Transportation and Environmental Affairs, Council of the District of Columbia, Report on Bill 4–389, the "Anti–Drunk Driving Act of 1982" (May 5, 1982).

Intoxilyzer 5000, the machine used to test Williams' breath, for example, takes only a sample of 81 milliliters (or 81 cubic centimeters) of breath. S. BRENT & S. STILLER, HANDLING DRUNK DRIVING CASES § 10:2, at 167 (1985).

Because the statutory language itself is ambiguous, we turn to an examination of the Anti–Drunk Driving Act as a whole to interpret the language of § 40–716(b)(1). *See Peoples Drug Stores*, 470 A.2d at 754. This Act added the provision at issue here, the *per se* offense of driving while intoxicated. This provision was meant to make it easier for the Corporation Counsel to obtain convictions in drunk driving cases. Committee on Transportation and Environmental Affairs, Council of the District of Columbia, Report on Bill 4–389, the "Anti–Drunk Driving Act of 1982," at 1 (May 5, 1982) [hereafter Committee Report]. The Council defined the *per se* offense in terms of blood alcohol content and provided for the first time that blood alcohol content (BAC) could be proved through breath tests. 1981–82 D.C.Stat. 523, 525.

■ In light of the purposes of the Anti–Drunk Driving Act of 1982, we read D.C. Code § 40–716(b)(1) (1986) to establish a ratio by which to compare blood and breath samples and to prove blood alcohol content for purposes of the *per se* offense. The concentration of alcohol in breath is much less than the concentration of alcohol found in blood. Therefore, after the alcohol content of breath is determined, the results are multiplied by 2,100 to compare the results to blood alcohol content. S. BRENT & S. STILLER § 7:3, at 97. Since the statute defines the violation in terms of blood alcohol content, we conclude that the phrase allowing breath test results—"an equivalent quantity of alcohol is contained in at least 2,000 cubic centimeters of his breath" —establishes the means of comparing the concentration of alcohol in breath to the concentration of alcohol in blood. Accordingly, the *per se* offense of driving while intoxicated, D.C.Code § 40–716(b)(1) (1981), *does not* require proof that the breath test used a sample of 2,000 cubic centimeters of breath. The evidence, therefore, was suffi-

cient to convict appellant of driving while intoxicated.

## III.

Appellant contends the results of his breath test should not have been admitted because the government did not establish that the methodology used by the test is generally accepted in the scientific community. In *Frye v. United States*, 54 U.S. App.D.C. 46, 47, 293 F. 1013, 1014 (1923), the United States Court of Appeals for the District of Columbia Circuit wrote that before expert testimony about a new scientific principle could be admitted, the testing methodology must have become "sufficiently established to have gained general acceptance in the particular field in which it belongs." The *Frye* test has been extended to test results as well. *Jones v. United States*, 548 A.2d 35 (D.C.1988) (enzyme multiplied immunoassay technique (EMIT); *Brown v. United States*, 384 A.2d 647 (D.C.1978) (voice spectrography). The *Frye* test acts as a threshold requirement of admissibility. Once the test is shown to be generally accepted in the scientific community, "we will accept it as presumptively reliable and thus generally admissible into evidence." *Jones*, 548 A.2d at 39. The opponent of the evidence may still challenge the weight of the evidence. *Id.*

■ We hold that the Council, in enacting the Anti–Drunk Driving Act of 1982, legislatively endorsed breath testing and, therefore, that the government need not meet the *Frye* test before breath test results are admissible. At the time the Council passed the Anti–Drunk Driving Act of 1982, the use of breath tests in the District of Columbia was well established. Committee Report, at Attachment B (Statement of Captain Layfield, Metropolitan Police Department) (describing use of Breathalyzers by the Department). The Council endorsed breath testing by allowing the use of breath tests to establish blood alcohol content under the *per se* violation. D.C. Code § 40–716(b)(1) (1986). Moreover, the Council provided that certificates containing breath test results could be admitted as substantive evidence without the testimony

of the technician or police officer who administered the test:

> Provided, that the police officer or the technician certifies that the breath test was conducted in accordance with the manufacturer's specifications, and that the equipment on which the breath test was conducted has been tested within the past 3 months and has been found to be accurate....

D.C.Code § 40–717.2 (1986). This section establishes two preconditions for the admissibility of breath test results: a certification that the machine was found to be accurate within the last three months and a test conducted according to the manufacturer's specifications. The Council therefore decided that, once these requirements are met, the tests are admissible; because of this legislative determination of the preconditions for admissibility, the government need not, in addition, satisfy the *Frye* test.

Defendants may still challenge the reliability and accuracy of their individual test results. Under D.C.Code § 40–717.2 (1986), the accused may seek to compel the technician or police officer to testify if the accused in writing states "the reasons why the accuracy of the test result is in issue" and requests the attendance of the technician or police officer. An accused may also call expert witnesses of his or her own. As a general matter, however, breath test results are admissible to prove the *per se* violation of driving while intoxicated.

In the present case, the certificate introduced into evidence met these requirements for admissibility. More specifically, the certificate stated that the test had been conducted "in accordance with operational procedures set forth by the Chief Medical Examiner and Equipment Manufacturer" and that the equipment had been "tested and found to be accurate within the past 3 months by the D.C. Office of the Chief Medical Examiner." Appellant challenged the reliability of his particular test results through cross-examination of Harding, but the trial court found the test results reliable. The trial court did not err in admitting the test results.[2]

### IV.

Appellant contends the trial court erred by admitting circumstantial evidence of appellant's intoxication: Harding's testimony about the circumstances leading up to the arrest. Appellant argues that this evidence was irrelevant and, therefore, inadmissible. Appellant did not object to this testimony on this ground at trial, however, and we find no plain error in its admission.[3]

Appellant also contends that the admission of the circumstantial evidence of his intoxication resulted in a variance between the charge in the information and the proof at trial, such that the information was constructively amended. This contention is frivolous. No such amendment occurred; appellant was not convicted of a charge different from the one contained in the information. The information charged appellant with the *per se* offense of driving while intoxicated, and the trial court convicted him of this charge.

*Affirmed.*

---

2. Appellant also argues the trial judge erred by improperly speculating that the test results would not have been lower if the machine had had a sufficient sample. Appellant argues that the trial court could not rely on the testimony of the arresting officer because the officer had not been qualified as an expert in the theory of breath testing. Appellant did not object to the officer's testimony at trial, however, either on the ground that the officer was not an expert or on the ground that the testimony was unreliable, and we find no plain error in admitting the testimony.

3. At trial, appellant objected that testimony about psychomotor tests to show intoxication require proof that the methodology is generally accepted in the scientific community. Appellant has not pursued this objection on appeal.