**Nathaniel RANSFORD, Calvin Fox, Michael Alexander, Ronald D. Williams, Appellants,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**Nos. 88–715, 88–1579, 89–161 and 89–625.**

District of Columbia Court of Appeals.

Argued Sept. 4, 1990.

Decided Dec. 5, 1990.

Philip Clarke Baten, Washington, D.C., for appellants in Nos. 88–715 and 89–161.

Scott D. Arnopol, Washington, D.C., for appellants in Nos. 88–1579 and 89–625.

Mary L. Wilson, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the briefs, for appellee.

Before NEWMAN, BELSON, and FARRELL, Associate Judges.

FARRELL, Associate Judge:

These consolidated appeals present the common question whether, in a prosecution for the *per se* offense of driving while intoxicated, D.C.Code § 40–716(b)(1) (1990), the government must present expert testimony "extrapolating" or relating the results of a blood alcohol test administered after the accused's arrest to his blood alcohol level at the time of operation of the vehicle. We answer that question in the negative and affirm the convictions.

I.

As this court has explained before, *Washington v. District of Columbia*, 538 A.2d 1151 (D.C.1988), there are "two dis-

tinct ways" in which a person can violate D.C.Code § 40–716(b)(1). The one, with which each appellant was charged here, is "the so-called 'per se' offense of driving 'while intoxicated,'" which requires the District "to prove only that the person was operating a vehicle in the District of Columbia while the person's blood contained .10 percent or more alcohol (or while the person's urine contained .13 percent or more alcohol)." *Id.* at 1156. By contrast, the second offense, driving "under the influence," "can rest on an accumulation of evidence other than a test result showing .10 percent blood alcohol content...." *Id.* Blood alcohol content may be proved by the results of a blood, urine, or breath test performed on equipment that has been checked for accuracy as required by the statute. *Id.;* D.C.Code §§ 40–716(b)(1), –717.2.

Appellant Ransford was arrested while seated in the driver's seat of a car that had been involved in an accident. Breath tests were administered to him at a police station approximately 50 and 86 minutes after his arrest; the first test yielded a blood alcohol reading of .21 percent, the second a reading of .20 percent. Appellant Fox was arrested after he was stopped for obstructing traffic. At the police station he submitted to breath tests 35 and 64 minutes after his arrest, resulting in blood alcohol readings of .13 percent and .15 percent, respectively. Appellant Alexander was arrested for traffic violations and taken to a police station where, 64 and 69 minutes after his arrest, breath tests were administered which showed a blood alcohol content of .125 percent and .121 percent, respectively. Appellant Williams was arrested for speeding and driving while intoxicated, and taken to a police station where breath tests were administered 42 and 72 minutes after his arrest, yielding a blood alcohol content of .13 percent each time.

At trial in each case, a copy of the chemical test certification form was admitted into evidence; in none of the cases did the government offer expert evidence extrapolating from the breath test results to the defendant's blood alcohol content at the time of driving. In each case the trial judge rejected the claim that such evidence was necessary for conviction, and found the defendant guilty as charged. On appeal, each appellant contends that expert "relation back" evidence is required as a matter of law by the statutory conjunction of a prohibited blood alcohol level *and* the actual operation of a motor vehicle.

## II.

Section 40–716(b)(1) prohibits an individual from operating (or being in physical control of) a vehicle *"when* the individual's blood contains .10 percent or more ... of alcohol" (emphasis added). Thus, to establish the offense, the government must prove that the person had the required blood alcohol content *while* operating or in control of the vehicle. To recognize this, however, is not to say that the government must offer results of chemical tests administered "when" the person was driving—an obvious impossibility. We have already rejected one interpretation of § 40–716(b)(1) that would produce an "absurd result." *Williams v. District of Columbia,* 558 A.2d 344, 345 (D.C.1989) (*per se* offense does not require proof that breath test used sample of 2,000 cubic centimeters of breath, despite statutory reference to "equivalent quantity [10 percent or more of alcohol] ... contained in at least 2,000 cubic centimeters of ... breath"). Requiring measurement of the blood alcohol level at the precise time of driving would be equally absurd. *See State v. Taylor,* 132 N.H. 314, 317–18, 566 A.2d 172, 174 (1989); *State v. Tischio,* 107 N.J. 504, 508–12, 527 A.2d 388, 390–91 (1987), *appeal dismissed,* 484 U.S. 1038, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988).[1] Thus, proof of a driver's blood

---

1. It also would contradict D.C.Code § 40–717.2, which provides that an official copy of the results of any blood, urine, or breath test performed on a person shall be admissible as substantive evidence provided a police officer or technician certifies, *inter alia,* "that the breath test was conducted in accordance with the manufacturer's specifications...." Such specifications almost certainly would mandate a waiting period before the test is administered, since "it is a fundamental and unanimously acknowledged rule that no breath test conducted within

alcohol content while driving necessarily must embrace evidence of the results of chemical tests administered some time after the person was stopped.

Appellants do not seriously dispute this conclusion, but argue that if exact contemporaneous proof is impossible, the statute at least requires evidence linking (or relating back) the test results to the driver's blood alcohol content at the time he was stopped. Moreover, citing *Desmond v. Superior Court*, 161 Ariz. 522, 779 P.2d 1261 (1989), which construed a similar Arizona statute, they contend that "relating the [blood alcohol content] back to the time of arrest will most often require testimony by someone qualified as an expert." *Id.* at 528, 779 P.2d at 1267. This is so, appellants argue, because of the recognized "blood alcohol curve" which admits of the possibility that a driver, having just recently consumed alcohol, did not reach the prohibited .10 percent blood alcohol level until some time after he stopped driving.

The government responds that, in effect, this court already has rejected a requirement of extrapolation evidence. It points to *Washington v. District of Columbia, supra*, in which—as in the instant cases—the government "addressed its proof [solely] to the 'per se' violation," 538 A.2d at 1154 n. 3, adducing evidence that the driver was tested twice for blood alcohol content 75 minutes after his arrest and again 34 minutes later, resulting in blood alcohol readings of .13 and .11 percent. In upholding the conviction, the court observed simply: "The two breath tests administered to appellant indicated that his blood alcohol level at the time he was driving exceeded .10 percent." *Id.* at 1152. *See also Williams v. District of Columbia, supra* (affirming conviction for *per se* offense

based on breath test scores administered at police station); *Bungardeanu v. England*, 219 A.2d 104, 109 (D.C.1966) (holding that urine specimen "was given in close enough proximity to the events in question to provide an accurate indication of the alcohol in petitioner's system at that time"). In none of these cases, apparently, did the government present expert testimony relating the test results to the driver's blood alcohol level at the time of operation.

Nevertheless, because the issue of expert testimony on extrapolation does not appear to have been raised in those cases, we shall treat the issue as one of first impression in this jurisdiction. We have no difficulty in rejecting appellants' argument as inconsistent with the intent of the legislature in enacting the *per se* offense.

As the government points out, since 1958 Congress and the Council of the District of Columbia have progressively strengthened the District's drunk driving laws and eased the burden of prosecuting such offenses by means of presumptions derived from the results of blood alcohol tests. In 1958, Congress enacted the first such presumptions. Pub.L. No. 85–338, §§ 1, 2, D.C. Code § 40–609a (1961 ed.). The law provided that in a drunk driving case, "competent proof" that "at the time" the defendant was driving his blood alcohol was .05 percent or less constituted *prima facie* proof that the defendant was not under the influence of alcohol; a score of greater than .05 percent but less than .15 percent was deemed "relevant evidence" but not "*prima facie* proof that the defendant was or was not ... under the influence"; and a score of .15 percent or more was *prima facie* proof that "defendant at such time [of driving] was under the influence of intoxicating liquor." [2] The Senate Report

---

less than 15 minutes after the last drink is valid." R. Erwin, *Defense of Drunk Driving Cases*, § 18.02[2], at 18–73 (3d ed. 1989). And it would make blood tests impossible in practice, since "[o]nly a physician or registered nurse acting at the request of a police officer may withdraw blood for the purpose of determining the alcoholic content or the drug content thereof." D.C.Code § 40–503.

**2.** Under the 1958 Act, submission to a blood alcohol test was voluntary on the defendant's part, D.C.Code § 40–609(e) (1961 ed.); there was no sanction for refusal to take the test. In 1972 Congress enacted the first implied consent provision, § 40–1001 et seq. (1973 ed.), which made refusal to submit to a test grounds for revocation of a driver's license for six months. The 1982 Anti–Drunk Driving Act, discussed in the text, *infra*, made the refusal to submit admissible in evidence and increased the term of

on the 1958 law explained why Congress enacted these presumptions:

> The enactment of this legislation would be of considerable benefit to the government of the District of Columbia in connection with its prosecution of persons charged with operating a motor vehicle while under the influence of liquor, since *it would allow the District to dispense with the services of an expert witness to interpret the results of a chemical analysis of the blood or urine of persons charged with such an offense.* At the present time, whenever the District of Columbia desires to present such evidence, it is necessary that the services of a qualified expert witness be secured. There is, however[,] only one such witness available to the District, and it frequently occurs that he is not available at the time of trial, with the result either that the trial must be delayed, or that no use be made of such evidence. [The 1958 law] would make it possible for the trials of persons charged with operating under the influence of intoxicating liquor to be conducted more efficiently, with less likelihood of delay, *by substituting certain statutory presumptions for the usual (and standardized) explanation that is presently given by the expert witness in each such case.*

S.Rep. No. 460, 85th Cong., 1st Sess. 2 (1957) (emphasis added).[3]

In 1972, Congress reduced the percentage level of alcohol in a person's blood necessary to establish *prima facie* proof of driving under the influence from .15 to .10 percent, but preserved the language from the earlier law concerning "competent proof" of a driver's blood alcohol content "at the time" he was driving. Pub.L. No. 92–519, § 8, D.C.Code § 40–609a(2) and (3) (1973 ed.). The purpose of the law was "to promote safe driving and eliminate the reckless and irresponsible driver from the streets and highways of the District of Columbia[.]" S.Rep. No. 1262, 92d Cong., 2d Sess. 1 (1972).

The Anti–Drunk Driving Act of 1982, D.C.Law No. 4–143, 29 D.C.Reg. 3138 (1982), amended the earlier drunk driving laws to make enforcement still more effective and convictions easier to obtain. *See* Council of the District of Columbia, Committee Report on Bill 4–389, at 1, 2 (May 5, 1982). The 1982 Act carried forward the language in the 1958 and 1972 laws regarding "competent proof" of a defendant's blood alcohol level "at the time" he was driving, but provided that a level of .05 percent or above was *prima facie* proof that the defendant was under the influence of intoxicating liquor. D.C.Code § 40–717.1. The Act also allowed the results of a chemical test to be admitted at trial without the testimony of the technician or police officer who administered the test. § 40–717.2.

Most importantly for our purposes, the Act established the *per se* offense of operating a vehicle when the driver's blood alcohol content is .10 percent or more. § 40–716(b)(1). The Council enacted this provision in light of scientific data pointing to the special dangerousness of drivers with blood alcohol concentrations of more than .10 percent. Committee Report, *supra*, Attachment K ("Facts on Alcohol and Highway Safety"). Given the Council's manifest intent to "strengthen the District of Columbia drunk driving laws," *id.* at 1, it would "do violence" to this intent to hold that the Council simultaneously meant to reintroduce a requirement of expert relation-back testimony that Congress previously had been at pains to eliminate. *Murray v. United States*, 358 A.2d 314, 319 (D.C.1976) (proffered construction of Implied Consent Act "would do violence to the intent of this statute ... [and] thwart successful prosecution of motorists causing serious injury or death while under the influence of alcohol"). Indeed, to insist on

---

possible revocation for refusal to twelve months.

**3.** The House of Representatives Report similarly explained that the 1958 law

will simply make it unnecessary to call an expert witness to testify in each individual case. Instead it would substitute the tests set forth in this bill.

H.R.Rep. No. 1202, 85th Cong., 1st Sess. 3 (1957).

the need for extrapolation evidence would lead to the anomaly that a test result showing .10 percent or more blood alcohol content is sufficient to prove driving under the influence but the identical result does not prove the *per se* offense of ".10 percent or more" without expert testimony interpreting the result.[4] That consequence, which is scarcely in harmony with the Council's avowed aim to "make it easier for the Corporation Counsel to obtain convictions in drunk driving cases," Committee Report, *supra*, at 1, is the sort of "absurd result" we have twice rejected in construing the laws concerning drunk driving, *Murray, supra*, 358 A.2d at 319; *Williams v. District of Columbia, supra*, and now reject again. *See also Doyle v. State*, 633 P.2d 306, 311 (Alaska Ct.App.1981) ("Since one of the obvious reasons for the breathalyzer presumption is to avoid the necessity of calling expert witnesses in each case, such a construction [of the statute] would be senseless"); *State v. Tischio, supra*, 107 N.J. at 517–19, 527 A.2d at 395 (requiring expert evidence of extrapolation would "frustrate [the] strong and consistent regulatory scheme" that "emphasized the minimization, if not elimination, of expert testimony" at drunk driving trials).

We hold, therefore, that evidence of the results of blood alcohol tests administered within a reasonable time after operation of the vehicle is sufficient, without more, to establish the *per se* offense under § 40–716(b)(1). Not only does the statutory scheme compel this result, but there are practical reasons why the legislature could not plausibly have meant to impose an extrapolation requirement, reasons persuasively stated by the New Hampshire Supreme Court:

First, it is conceded by the State and the defendant that a driver's blood alcohol content increases for a period of time after consumption and then begins to decrease as the alcohol is eliminated, principally through metabolism. *See* 2 D. Nichols, *Drinking/Driving Litigation* § 23:01 (1985). Extrapolation, however, requires evidence that the State will rarely be able to acquire because of the defendant's constitutional right to remain silent. Extrapolation requires evidence as to when, and in what amounts, the defendant consumed the alcohol prior to driving. Without this information, which is wholly within the defendant's knowledge in the vast majority of cases, extrapolation of blood alcohol content back to the time of driving becomes an impossible task. The legislature could not have intended to place such an impossible burden on the State.

Second, even if the State were able to obtain evidence as to the exact time and the precise amount of alcohol consumed by the defendant prior to his driving, conclusive evidence of the blood alcohol content at the time of driving could still not be offered to the jury in the guise of a general rule because the rate of absorption of alcohol varies considerably between individuals. One study found that the peak blood alcohol level is reached, after consumption, in anywhere from 14 to 138 minutes. *Nichols, supra* § 23:05 (Supp.1989). The extrapolation evidence is further complicated by the amount of food consumed by the defendant at the time he consumes alcohol, which affects the rate of absorption. *Nichols, supra* § 23:06. This evidence is, again, wholly within the knowledge of

---

4. Section 40–717.1 provides that evidence that the defendant's blood contained .05 percent or more of alcohol at the time of operation shall constitute *prima facie* proof that the defendant was, at such time, under the influence of intoxicating liquor, provided that at trial "there is received in evidence, based upon a chemical test, competent proof" of the blood alcohol content. Section 40–717.2, in turn, defines "competent proof" for this purpose by providing that, in any proceeding in which a person is charged with violating § 40–716(b) (including driving under the influence), an official copy of the results of any blood test performed by a technician or police officer "shall be admissible as substantive evidence, without the presence or the testimony of the technician or of the police officer who administered the test...." Appellants make no claim that relation-back testimony is necessary in prosecutions for driving under the influence (*see, e.g.,* Brief for Appellant Ransford at 6). As explained previously, the very reason the legislature enacted the statutory presumption ("prima facie proof") was to obviate the need for expert testimony in prosecutions for driving under the influence.

the defendant. The legislature could not have intended to place such impossible roadblocks in the way of the State in prosecuting DWI cases.

*State v. Taylor, supra,* 132 N.H. at 320, 566 A.2d at 175–76. *See also State v. Tischio, supra,* 107 N.J. at 519–21, 527 A.2d at 396.

The government urges us (though it would settle for less) to follow the lead of the New Jersey Supreme Court in *Tischio* and hold that extrapolation evidence not only is not required of the government but may not be introduced by the defense—in a word, is irrelevant. *See* 107 N.J. at 506–08, 527 A.2d at 389 ("[W]e hold further that extrapolation evidence is not probative of this statutory offense and hence is not admissible"). But the New Jersey court reached that result by reading its statute to mean that "it is the blood-alcohol level at the time of the breathalyzer test that constitutes the essential evidence of the offense." *Id.* The District likewise argues that our *"per se* offense prohibits a person from driving after having consumed a sufficient amount of alcohol for the person's blood alcohol content to reach the prohibited level when tested within a reasonable time after being stopped, *regardless of the person's actual BAC at the time he was driving"* (emphasis added). We reject that reading as contrary to the plain meaning of our statute. It is also inconsistent with our recognition in *Washington v. District of Columbia, supra,* that a test result of .10 percent or more blood alcohol content is not "irrebuttable evidence" of violation of § 40–716(b)(1), but rather the trier of fact must also consider "relevant evidence tending to show that the accused did not have as much as .10 percent blood alcohol content, *e.g.,* evidence that he had not consumed enough alcohol in the relevant time period to reach that level, or evidence of behavior inconsistent with such a blood alcohol level." 538 A.2d at 1157.

5. Appellant Alexander contends that the judge erred in refusing to order production under the Jencks Act of the breath testing machine log book. However, the information contained in the log book relevant to this case had been copied from the "tickets" that came out of the

In the cases before us, the blood alcohol test results admitted into evidence furnished *prima facie* proof that each defendant had .10 percent or more alcohol in his blood at the time of the offense. In three of the four cases, the defendants offered no extrapolation evidence (expert or otherwise) to rebut the *prima facie* showing and in the fourth the trial judge considered and rejected appellant Ransford's argument that the negative results of a roadside breath test offset the later positive test results as insufficient to rebut the more probative results of the later tests.[5]

Accordingly, the judgments of convictions are

*Affirmed.*

machine showing the test results, and the tickets were given to defense counsel. The judge's evidentiary ruling was thus not clearly erroneous. *Campbell v. United States,* 373 U.S. 487, 493, 83 S.Ct. 1356, 1360, 10 L.Ed.2d 501 (1963).