**Antonio M. VILLA, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 97–CT–1388.**

District of Columbia Court of Appeals.

Submitted March 9, 2000.

Decided Aug. 2, 2001.

Mattie P. Johnson, appointed by the court, was on the brief, for appellant.

Robert R. Rigsby, Corporation Counsel, Charlotte W. Parker, Acting Deputy Corporation Counsel, and Rosalyn Calbert Groce and Sidney R. Bixler, Assistant Corporation Counsel, were on the brief, for appellee.

Before WAGNER, Chief Judge, and TERRY and STEADMAN, Associate Judges.

TERRY, Associate Judge:

Following a non-jury trial, appellant Antonio Villa was convicted of driving under the influence of intoxicating liquor, in violation of D.C.Code § 40–716(b)(1) (1998). In the course of the trial, defense counsel cross-examined the police officer who had administered a breathalyzer test to Mr. Villa. At one point, counsel's line of questioning became repetitive, and the govern-

ment objected. The trial court sustained the objection and, in doing so, placed a limitation on counsel's ability to cross-examine the witness further, relying in part on D.C.Code § 40–717.2 (1998). Villa now contends that his conviction should be overturned because the court's interpretation of section 40–717.2 was erroneous and that, because he was prevented from further developing his line of questioning, he was denied his Sixth Amendment right to confront a witness and present a defense. We agree that the trial court's interpretation of the statute was erroneous, but we hold that the error was harmless and affirm the conviction.

I

On April 24, 1997, at about 7:30 p.m., Officer Ramon Perez of the Secret Service Uniformed Division and his partner, Officer Garris, were approached by three young women who told them that a man in a burgundy van had shouted obscenities at them. They pointed out the van, which was about half a block away. Perez and Garris started to approach the van in their patrol car, activating their siren and flashing lights as they pulled up next to it. As they did so, they saw that the van was positioned with three wheels on the sidewalk and one on the street. Mr. Villa was behind the wheel, attempting to maneuver it off the sidewalk. Officer Perez got out of the police car, walked over to Mr. Villa, and asked him to step out of the van. He complied with the request, alighting from the passenger side, but left the motor running; Officer Perez reached in and turned it off. As Perez started to ask him about the incident with the young women, he noticed that Villa's breath smelled of alcohol, his face was red, his eyes were glassy,

and his speech was slurred, and that he had soiled his clothes with his own urine. Mr. Villa was also "imbalanced, wobbly, incoherent. . . . He would just talk, talk, talk, talk, but you couldn't understand a lot of the things he was saying." [1] The officer also discovered an almost-empty bottle of Bacardi rum under the driver's seat. When asked to submit to a field sobriety test, Mr. Villa refused to comply and "became combative. He started fighting, at which time he had to be handcuffed." The officers placed Mr. Villa under arrest and transported him to the Third District police station. There he was given two breathalyzer tests, which showed a blood alcohol content of .20 percent at 8:09 p.m. and .23 percent at 8:13 p.m.

In his testimony Mr. Villa admitted that he had been drinking that night and that he was intoxicated at the time of his arrest. His defense was that another man had been driving the van. The court, however, found him guilty of driving under the influence. He was sentenced to a $300 fine, ninety days in jail (with all but three days suspended), and one year's probation.

II

Mr. Villa's sole claim of error stems from his counsel's cross-examination of Officer James Hitchcock, who administered the breathalyzer tests. Counsel started by asking the officer about his qualifications to conduct the tests, including his compliance with any re-certification procedures. When asked whether a deficient breath sample would cause the machine to give an inaccurate reading, the officer replied that it would not. Defense counsel then asked, again, whether an operator should be re-certified and whether Officer Hitchcock

1. Both the officer and Mr. Villa spoke Spanish, and their conversation was carried on mostly in Spanish.

was properly certified to give the tests. The prosecutor objected to the question on the ground that it had already been asked and answered. The court sustained the objection and also ruled that the defense was required under D.C.Code § 40–717.2 to give notice fifteen days before trial that it intended to object to the qualifications of the test administrator, which counsel had not done. Despite this limitation, however, defense counsel was permitted to continue his cross-examination of the officer about the machine and the manner of its use.

D.C.Code § 40–717.2 provides in pertinent part:

An official copy of the results of any blood, urine, or breath test performed on a person by a technician or by a police officer shall be admissible as substantive evidence, without the presence or the testimony of the technician or of the police officer who administered the test, in any proceeding in which that person is charged with a violation of § 40–716(b); provided ... that the person ... or that person's attorney, may seek to compel the attendance and the testimony of the technician or of the police officer in any proceeding by stating, in writing, the reasons why the accuracy of the test result is in issue and by requesting, in writing, at least 15 days in advance of the proceeding, that such technician or such police officer appear and testify in the proceeding.

Thus the statute places the burden upon the defendant to request the test administrator's presence at trial if he wishes to challenge the accuracy of a breathalyzer or other blood alcohol test.

■ The purpose of section 40–717.2 is to obviate a test administrator's presence at trial unless he or she is going to be called as a witness. COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT ON BILL 4–389, THE "ANTI DRUNK DRIVING ACT OF 1982," at 1, 4 (May 5, 1982). The statute permits an official copy of the results of a blood alcohol test to be introduced at trial as substantive evidence without the presence or testimony of the person who administered the test, so long as certain procedures are followed to ensure accuracy. *See Washington v. District of Columbia,* 538 A.2d 1151, 1154 (D.C.1988). In this case the trial court, in sustaining an objection to the repetitious cross-examination of Officer Hitchcock, ruled in addition that "this whole line of questioning [was] improper" because defense counsel had not complied with the procedural requirements of section 40–717.2. The court admonished counsel to "move on to something else."

■ Where the trial court erred was in its reliance on section 40–717.2 in limiting (or purporting to limit) defense counsel's cross-examination of the officer. The court failed to recognize what is apparent on the face of the statute: that when the person who administers the test is present at trial *and is actually testifying,* section 40–717.2 is no longer relevant. The statute simply provides a means for a defendant to compel a test administrator to testify at a trial. But when that person is already present and on the witness stand, the statute has no function, and defense counsel may conduct whatever cross-examination may be appropriate without regard to section 40–717.2.

■ The government contends that the trial court's erroneous reading of the statute was harmless, given the strength of the evidence and the lack of prejudice resulting from the error. When this court considers a claim of error based on curtailment of a defendant's right to cross-examine, our standard for determining harmlessness depends on the degree of curtailment. If the trial court has com-

pletely denied the defendant an opportunity to cross-examine a witness, we will affirm the conviction only if we can find the error harmless beyond a reasonable doubt under *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). On the other hand:

> [W]here ample cross-examination has already been allowed or evidence admitted on a particular issue, trial court curtailment of the defendant's presentation does not implicate the defendant's Sixth Amendment rights, and we apply the less stringent test for harmless error set forth in *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

*Clark v. United States*, 639 A.2d 76, 82 (D.C.1993) (citations omitted). Since defense counsel in this case was not "wholly deprived ... of any opportunity to cross-examine or present evidence concerning ... a central issue in the case," *id.* at 81, *Chapman* does not apply. Under *Kotteakos*, the test is whether we can "say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." 328 U.S. at 765, 66 S.Ct. 1239. The case at bar fits easily within *Kotteakos*.

■ First, the government's evidence was very strong. It included two blood alcohol tests administered shortly after Mr. Villa's arrest, the first of which showed a blood alcohol content (BAC) of .20 percent, and the second a BAC of .23

percent. Section 40–716(b)(1) makes it an offense for a person who operates a vehicle to have a BAC of .10 percent or more.[2] Although Mr. Villa was not convicted under this portion of the statute, which defines the offense known as driving while intoxicated ("DWI"), the evidence of his BAC was relevant and probative of the offense of which he was convicted, driving under the influence of alcohol ("DUI"), which is also proscribed by section 40–716(b)(1).[3] In addition, the testimony of Officer Perez established that Mr. Villa's breath smelled of alcohol and that his speech was slurred, his eyes were glassy, and he had urinated on himself. Finally, appellant admitted under oath that he had been drinking that evening and was intoxicated when he was arrested.

Second, and of equal importance, the trial court's error did not prevent defense counsel from cross-examining Officer Hitchcock about his qualifications and about the accuracy of the breathalyzer test. To the contrary, the court permitted extensive questioning on these matters and allowed it to continue up to the point that it became redundant, and even after that for several more pages of transcript. We are satisfied that the court's misreading of section 40–717.2, in the course of sustaining the government's valid objection, did not deprive the defense of a meaningful opportunity to cross-examine the officer. The effect of the court's ruling was simply to prohibit defense counsel from continuing a line of questioning that he had already been permitted to develop fully. In

**2.** A 1999 amendment reduced the allowable amount of alcohol from .10 percent to .08 percent. *See* D.C.Code § 40–716(b)(1) (2000 Supp.).

**3.** There are "two distinct ways in which a person may be found to have violated [the] statute." One of them is "the so-called 'per se' offense of [DWI].... [The other is] the offense of [DUI].... A conviction for [DUI]

can rest on an accumulation of evidence other than a [BAC] test result, [such as] erratic driving by the accused, slurred speech, odor of alcohol on the breath, and evidence of a blood alcohol content of .05 percent [lowered to .03 percent by the 1999 amendment; see note 2, *supra*] or more." *Washington v. District of Columbia*, 538 A.2d at 1156 (citations and footnote omitted).

the words of *Kotteakos*, we can say "with fair assurance" that the judgment of the court "was not substantially swayed by the error." 328 U.S. at 765, 66 S.Ct. 1239.

The government's case against Mr. Villa was strong, the effect of the error was negligible, and the trial court allowed sufficient cross-examination to dispel the possibility of undue prejudice to the defense. We hold accordingly that the error was harmless. The judgment is therefore

*Affirmed.*